DEC 27 2022 PM2:41
FILED-USDC-CT-New Haven

**UNITED STATES DISTRICT COURT**
**District of Connecticut**
**New Haven Division**

----------------------------------------------------

CHRISTOPHER A. AMBROSE,

        Plaintiff,

    V.

FRANK PARLATO, JR.,

        Defendant.

----------------------------------------------------

Case No. ___22cv1648___

## DEFENDANT FRANK PARLATO, JR.'s NOTICE OF LIMITED JURISDICTIONAL APPEARANCE, NOTICE OF REMOVAL TO FEDERAL COURT, AND MOTION TO DISMISS

### LIMITED JURISDICTIONAL NOTICE OF APPEARANCE

Defendant Frank Parlato, Jr. ("Defendant" or "Mr. Parlato") respectfully makes a limited appearance in this matter, does not consent to the jurisdiction of this Court, contests Plaintiff Christopher A. Ambrose's ("Plaintiff" or "Mr. Ambrose") improper, illegal, and unconstitutional assertion of jurisdiction over Defendant, disputes the sufficiency and propriety of the service of legal process in this matter. Jurisdiction does not lie over Mr. Parlato in the State of Connecticut. All papers can be served upon Mr. Parlato at the mailing address below, with a courtesy copy sent to Mr. Parlato's email address at: frankparlato@gmail.com.

### PRO SE LITIGANT

I am a pro se litigant, unskilled in the science of law. In the interests of justice, I ask the Court to construe these pleadings of a pro se litigant in a lenient, liberal, and non-technical manner

1

to raise the strongest arguments they suggest. *See generally Haines v. Kerner,* 404 U.S. 519, 520-21, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972); *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir. 1995).

## NOTICE OF REMOVAL

DEFENDANT, FRANK PARLATO, JR., files this Notice of Removal under 28 U.S.C. §§ 1441, 1446, and Fed. R. Civ. P. 81(c).

## STATEMENT OF FACTS ENTITLING DEFENDANT TO REMOVAL

**A.** The action pending in the Superior Court of the State of Connecticut, Judicial District of New Haven at New Haven entitled **Ambrose, Christopher, A. v. Parlato, Frank, Jr.**, Docket No.NNH-CV22-5054243-S was commenced on July 21, 2022.

**B.** Copies of the pleadings in the above-described action are appended to the Notice of Removal filed in the United States Court for the District of Connecticut as required by 28 U.S.C. § 1446. See **EXHIBIT "A"** attached to the appended Declaration of Frank Parlato, Jr. No papers were ever served on the removing Defendant, Frank Parlato, Jr.

**C.** As the appended record demonstrates, the action pending in the state court is a civil action within the original diversity jurisdiction of the federal district courts under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the litigants and the amount in controversy exceeds $75,000:

    **a.** CITIZENSHIP. Plaintiff CHRISTOPHER A. AMBROSE is a citizen of the State of Connecticut, while Defendant FRANK PARLATO, JR. is a citizen of the State of Florida. Service of process has not been made on Defendant Frank Parlato, Jr.

    **b.** AMOUNT IN CONTROVERSY. The amount in controversy in the action exceeds $75,000, exclusive of interest and costs, in that Plaintiff, attorney Christopher A.

Ambrose, alleges severe and substantial harms against Defendant, journalist Frank Parlato, Jr., including but not limited to 1) Invasion of Privacy by False Light at Common Law and the Second Restatement of Torts, 2) Defamation at Common Law and Connecticut General Statutes § 53-237, and 3) Intentional Infliction of Emotional Distress at Common Law.

**c.** <u>SERVICE OF PROCESS</u>. Service of process has not been made on Defendant Frank Parlato, Jr.

**D.** Because the state court action is one within the diversity jurisdiction of the federal district courts, the action is removable to federal court under 28 U.S.C. §§ 1441(a) and (b) because the defendant is not a citizen of the State of Connecticut, noting that even if diversity jurisdiction exists, removal is not permitted under 28 U.S.C. § 1441(b) if any defendant is a citizen of the state in which the action is brought.

**E.** Removal to this district court is proper under 28 U.S.C. § 1441(a) because the Superior Court of the State of Connecticut, Judicial District of New Haven at New Haven, is geographically located within the jurisdiction of the United States District Court for the District of Connecticut.

**F.** Removal is timely under 28 U.S.C. § 1446(b) because this Notice of Removal is filed within 30 days of service of legal process because the defendant has not been served. Removal is also timely because this Notice of Removal is filed not more than one year after the action was commenced in the state court.

**G.** Removal is proper under 28 U.S.C. § 1446(b) because the defendant assents to the decision to remove, the defendant is the only defendant and has filed and served this Notice of Removal, and there are no other parties to this matter.

3

This NOTICE OF REMOVAL has been transmitted to be filed with the United States District Court for the District of Connecticut, New Haven Division, Richard C. Lee U. S. Courthouse United States District Court, 141 Church Street, New Haven, Connecticut 06510.

This NOTICE OF REMOVAL has also been transmitted to be filed with the Superior Court of the State of Connecticut, Judicial District of New Haven at New Haven.

Accordingly, the Court should grant the removal of this matter to the United States Court for the District of Connecticut.


**NOTICE OF MOTION**

Defendant Frank Parlato, Jr., moves this Honorable Court for an Order:

a) Striking Counts 1 and 3 pursuant to Rule 12(f) of the Federal Rule of Civil Procedure (FRCP) as duplicative of Count 2; or

b) Striking Counts 1 and 3 pursuant to FRCP Rule 12(f) as improperly plead, unsuccessful in law and fact, and prejudicial; and

c) Dismissing this matter pursuant to FRCP Rule 12(b)(2); or in the alternative

d) Dismissing this matter pursuant to FRCP Rule 12(b)(4); or in the alternative

e) Dismissing this matter pursuant to FRCP Rule 12(b)(5); or in the alternative

f) Dismissing this matter pursuant to FRCP Rule 12(b)(6); or in the alternative

g) Dismissing this matter pursuant to the doctrine of *Forum Non-Conveniens*; or in the alternative

h) Transferring this matter to the United States District Court for the Southern District of Florida, Key West Division; and

i) For such other and further relief as this Honorable Court shall deem just and equitable.

Defendant asks for a hearing as soon as the Court may hear the parties, and in compliance with Rule 6 of the FRCP, not before January 9, 2023, to afford proper notice to Plaintiff.

Defendant also asks that he may appear before the Court by Zoom and/or other videoconferencing means because Defendant is a resident of the State of Florida, has no contacts in the State of Connecticut, and it would be an undue burden for Defendant to appear in the State of Connecticut in person.

Defendant relies on the following Memorandum of Law and the attached Declaration of Frank Parlato Jr. (the "Declaration") in support of his applications to the Court.

## MEMORANDUM OF LAW

Boiled down, this is a defamation case by a lawyer against a journalist that should never have been brought in Connecticut.  The journalist has no minimum contacts with the State of Connecticut.  Due process does not support the journalist being haled into the Connecticut courts based on an article diligently and truthfully reporting the news on an Open Internet website, where the Defendant does not inject himself or purposefully avail himself of the Connecticut jurisdiction personally, through the mails and wires, or in any other way.

The lawyer should know better, and respectfully the Court should strike the duplicate defamation counts defectively recast as other torts. The Court should dismiss this case because the Court does not have personal jurisdiction over the Defendant.  In the alternative, Defendant gives the Court five (5) other bases upon which to dismiss this case AND a basis to transfer the case to the United States District Court for the Southern District of Florida, Key West Division, if the Court does not dismiss the case.  This case does not belong in Connecticut.

## THE FACTS

### The Parties and the Complaint

Plaintiff Christopher A. Ambrose ("Plaintiff" or "Mr. Ambrose") is an attorney admitted to practice law in the State of New York. His license is suspended because he has not complied with the Rules of the New York Court of Appeals concerning registration and CLE requirements.

On July 21, 2022, Mr. Ambrose filed a lengthy, rambling, verbose, meandering document styled as a "Complaint" in the Superior Court of the State of Connecticut, Judicial District of New Haven at New Haven. See **EXHIBIT "A."** The named Defendant in the lawsuit is Frank Parlato, Jr. ("Defendant" or "Mr. Parlato").

Attorney Ambrose alleges severe and substantial harms against Defendant, investigative journalist Frank Parlato, Jr., including but not limited to 1) Invasion of Privacy by False Light at Common Law and the Second Restatement of Torts, 2) Defamation at Common Law and Connecticut General Statutes § 53-237, and 3) Intentional Infliction of Emotional Distress at Common Law.

### Defendant Frank Parlato, Jr., is a Renowned Investigative Journalist

Mr. Parlato is an investigative journalist. His work has been cited in hundreds of news outlets, like The New York Times, The Daily Mail, VICE News, CBS News, Fox News, New York Post, New York Daily News, Oxygen, Rolling Stone, People Magazine, The Sun, The Times of London, CBS Inside Edition, among many others in all five continents.

Mr. Parlato's investigative work was instrumental in exposing and taking down the sex cult known as NXIVM, its principals being convicted in a prosecution brought by the U.S. Attorney for the Eastern District of New York. See U.S. v. Raniere et al., No. 20-3520-cr (L); 20-3789-cr (Con) (E.D.N.Y.) )(Garaufis, J.). Mr. Parlato's work is featured in books like "Captive"

6

by Catherine Oxenberg, "Scarred" by Sarah Edmonson, "The Program" by Toni Natalie, and "NXIVM. La Secta Que Sedujo al Poder en México" by Juan Alberto Vasquez.

Mr. Parlato has been prominently featured on HBO's docuseries "The Vow" and was the lead investigator and coordinating producer for Investigation Discovery's "The Lost Women of NXIVM." In addition, he was credited in the Starz docuseries 'Seduced' for saving 'slave' women from being branded and escaping the sex-slave cult known as DOS.

Mr. Parlato appeared on the Nancy Grace Show, Beyond the Headlines with Gretchen Carlson, Dr. Oz, American Greed, Dateline NBC, and NBC Nightly News with Lester Holt, where Mr. Parlato conducted the first-ever interview with Keith Raniere after his arrest. This was ironic, as many credit Mr. Parlato as one of the primary architects of Raniere's arrest by the FBI and the cratering of the sex cult he founded.  Mr. Parlato is a consulting producer and appears in TNT's The Heiress and the Sex Cult, which premiered on May 22, 2022.  Mr. Parlato also has an IMDb page — Frank Parlato. See https://en.wikipedia.org/wiki/Frank_Parlato,_Jr.

Mr. Parlato is the owner, publisher, and editor-in-chief of several media properties and websites, none of which have contacts with Connecticut.  Mr. Parlato was formerly the publisher of Art Voice and the Niagara Falls Reporter, weekly print publications in the Western New York area.  Relevant to this matter is The Frank Report (www.frankreport.com) and Art Voice (www.artvoice.com), both website-only media publications.

### Mr. Ambrose's Claims

Mr. Ambrose is upset that he was the subject of Mr. Parlato's journalistic coverage. Mr. Parlato talked about him on newsworthy matters.  Mr. Ambrose claims Mr. Parlato defamed him, and his words were so defamatory and false that the statements breached Mr. Ambrose's privacy,

destroyed Mr. Ambrose's reputation, and caused Mr. Ambrose extreme emotional distress. The

way Mr. Ambrose states it:

> Beginning on October 3, 2021 and continuing through the present,
> Parlato has maliciously published on the Internet no fewer than 48
> different "articles" that contain demonstrated falsehoods about every
> aspect of Plaintiff's character, history and beliefs and accuse him of
> crimes of moral turpitude. The cascade of lies Parlato published
> includes, but is not limited to,stating that Plaintiff: is a pedophile;
> sexually molests his children; emotionally and physically abuses his
> children; admits to watching child pornography; produces
> pornography; had multiple, multi-year extramarital affairs, including
> a gay lover; has stolen over $1 million from his spouse; is a
> "deadbeat" who did not financially support his estranged wife once
> he filed for divorce; has bribed and/or colluded with the guardian ad
> litem, custody evaluator, judges and his spouse's own attorneys to
> wrongfully gain custody of their children and keep her from seeing
> them; is an active participant in a vast, RICO conspiracy involving
> the Connecticut family court judiciary and bar as well as law
> enforcement, child protective services, elected and appointed public
> officials; is psychologically unstable; has a drinking problem and
> anger issues; and is an inveterate liar who makes frequent threats.

Surprisingly, since Mr. Ambrose is a lawyer,[1] Mr. Ambrose does not recognize several important

legal distinctions like statements of fact versus statements of opinion, or statements of fact based

upon source materials and/or published court documents. Every statement objectionable to Mr.

Ambrose is either a non-actionable opinion or a true statement of fact. Mr. Parlato is not liable for

any of the activity alleged by Mr. Ambrose.

   All of Mr. Parlato's words and actions were part of his legitimate investigative,

newsgathering, reporting, and publishing activity.  Mr. Parlato's activities were the creation and

utterance of words.  A reading of the Complaint shows that Mr. Parlato's actions and Mr.

Ambrose's consequent alleged injuries arise from words.  The core of Mr. Ambrose's claims is

---

[1] The record shows that Mr. Ambrose has not actively practiced law in twenty years and that his
license to practice law in New York is suspended because he has failed to meet the registration
and/or CLE requirements.

defamation claims. In fact, one claim is an actual "common law defamation" claim. And the other two are re-cast defamation claims, one alleging an amorphous "privacy violation" caused by Mr. Parlato and the other alleging "emotional distress" caused by Mr. Parlato's words, which is just a subspecies of alleged damages under the defamation claim.

The Complaint fails to allege facts that state a potential cause of action for anything other than defamation, as noted below. The Complaint fails to allege a single jurisdictional fact about how Mr. Parlato transmitted his allegedly harmful statements into the Connecticut jurisdiction using the mails or the wires of the United States. The Complaint talks all about Mr. Parlato's websites, which do not transact any business with Connecticut consumers, or any consumers for that matter. Mr. Parlato's websites are media outlets that qualify for First Amendment and Anti-SLAPP protection.

Mr. Parlato must be served by hand on a Connecticut defamation claim. Mr. Parlato has not been served in this case.

As a member of the press, Mr. Parlato's newsgathering and reporting activities afford him First Amendment and Anti-SLAPP protections and related immunity from suit. The Complaint does not allege that any of Mr. Parlato's activities are anything other than newsgathering and/or reporting.

But the Court will likely not get that far because Mr. Ambrose must establish a *prima facie* case that jurisdiction over Mr. Parlato complies with Connecticut law and due process, and this he cannot do.

**Jurisdictional Facts**

Mr. Parlato is a journalist. Mr. Parlato has media outlets where he publishes his reporting. Relevant to this matter, those sites are The Frank Report and Art Voice (together the "Websites"), which are both website-only media outlets.

Neither Mr. Parlato nor the Websites transact business in Connecticut. The Websites do not allow users to buy or sell anything. The only commodity that Mr. Parlato offers is Free Speech: investigative journalism, newsgathering, and reporting. Users may comment on the releases or posts on the Websites. Again, the Websites are Free Speech platforms.

Neither Mr. Parlato nor the Websites have contracts to be performed in Connecticut. Neither Mr. Parlato nor the Websites solicit business in Connecticut or provide advertising specifically to Connecticut. If Mr. Parlato is liable for anything, it is for disseminating investigative journalism, newsgathering, and reporting into the free market of ideas – Constitutionally protected activity.

Mr. Parlato committed no tortious conduct in Connecticut. The Websites do not promote commercial activity beyond protected free speech. The Websites do not specifically target individuals in Connecticut or individuals who would be likely to view the website on a computer screen in Connecticut for commercial purposes. Mr. Parlato has not directed his activities on the Websites so that they would be particularly reviewed or read by persons in Connecticut. Nor has Mr. Parlato made any statements on the Websites that he believed would affect persons in Connecticut beyond the reporting of the news.

Mr. Parlato has not transmitted his allegedly harmful statements into the Connecticut jurisdiction using the mails or the wires of the United States. Mr. Parlato and the Website disseminate information <u>towards</u> a general audience, which may be comprised of Connecticut

readers as well as anyone else globally.  The objectionable information attributable to Mr. Parlato and the Websites is all posted on an Open Internet forum that anyone in the world could view.

There is no allegation or proof that any posts allegedly written by Mr. Parlato were directly and expressly targeted at Connecticut. Any emails to Mr. Ambrose were directly and explicitly sent for legitimate journalistic purposes (i.e., requesting comments).  Mr. Ambrose does not allege that these news-gathering emails were tortious in nature. Mr. Ambrose's allegations in favor of personal jurisdiction are premised solely on Mr. Parlato and the Websites' Internet postings.

Mr. Parlato and the Websites have transmitted information about Mr. Ambrose on an Open Internet forum as part of its reporting activities.   Neither Mr. Parlato nor the Websites have specifically targeted Mr. Ambrose by threatening his life or safety.

Accordingly, Mr. Parlato cannot be subject to suit based on "tortious conduct in this state.." or any other provision of the long-arm statute.

The only potential surviving claim is defamation.  Assuming for the sake of argument that the defamation claim survives jurisdictional and due process analysis, Connecticut law requires a defamation action to be served by hand.  Mr. Parlato was never served with legal process in this case.

## **LEGAL ARGUMENT**

## **THE COURT SHOULD GRANT MR. PARLATO'S MOTION TO STRIKE COUNTS 1 AND 3 PURSUANT TO FRCP RULE 12(f)**

Fed. R. Civ. P. 12(f) provides that a court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 94 (2d Cir. 2019); *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). Accordingly, a motion to strike a defense "will not be granted unless it appears to a certainty that [defendant] would succeed despite any state of the facts which could be proved in support of the [Plaintiff'd claims]." *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984) (internal quotation marks omitted).

Courts in this Circuit typically apply a three-part test to motions to strike: "(1) there must be no question of fact that might allow the defense to succeed; (2) there must be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense." *See, e.g., Specialty Mins., Inc. v. Pluess-Stauger AG,* 395 F. Supp. 2d 109, 111 (S.D.N.Y. 2005) (same).

When considering the first and second prongs, courts apply a similar legal standard as that applicable to a motion to dismiss under Rule 12(b)(6): they must determine the "sufficiency of a [claim or ] defense . . . solely upon the face of the pleading" and "accep[t] as true all well-pleaded factual allegations and dra[w] all reasonable inferences in the [non-moving party's] favor." *Coach, Inc. v. Kmart Corps.,* 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010).

Mere assertions of prejudice by the moving party are insufficient to satisfy this prong. *County Vanlines Inc. v. Experian Information Solutions, Inc.*, 205 F.R.D. 148, 153 (S.D.N.Y. 2002).

12

### A. Plaintiff's Pleaded Counts 1 and 3 Fail Elemental Analysis as a Matter of Fact and Law

Plaintiff's Counts 1 and 3 fail under legal analysis because they are improperly pleaded as a matter of law and are merely restated defamation claims.

1. Defamation

"To prevail on a common-law defamation claim, a plaintiff must prove that the defendant published false statements about [him] that caused pecuniary harm. *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 27, 662 A.2d 89 (1995). To be actionable, the statement in question must convey an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion. See *Mr. Chow of New York v. Ste. Jour Azur S.A.*, 759 F.2d 219, 230 (2d Cir. 1985) (no liability where restaurant review conveyed author's opinion rather than literal fact); *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 [2d Cir.] ('[a] writer cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it may be') [cert. denied sub nom. *Hotchner v. Doubleday & Co.*, 434 U.S. 834, 98 S. Ct. 120, 54 L. Ed. 2d 95 (1977)]." *Daley v. Aetna Life & Casualty Co.*, 249 Conn. 766, 795-96, 734 A.2d 112 (1999). In a civil action for defamation, where the protected interest is the plaintiff's personal reputation, the rule in Connecticut is that the truth of the allegedly defamatory statement of fact provides an absolute defense. *Goodrich v. Waterbury Republican-American, Inc.*, [188 Conn. 107, 114-15, 119-20, 448 A.2d 1317 (1982)].

Concerning common-law privilege defenses, a defendant may shield himself from liability for defamation by asserting the defense that a qualified privilege protects the communication. The court must resolve two inquiries when considering whether a qualified privilege protects a defendant in a defamation case. The first is whether the privilege applies, which is a question of law.

13

The second is whether the applicable privilege nevertheless has been defeated through its abuse, which is a question of fact." (Internal quotation marks omitted.) Id., 432 n.32.

"Qualified privileges may be defeated by a showing, by a preponderance of the evidence; see *Miles v. Perry*, [11 Conn. App. 584, 590, 529 A.2d 199 (1987)]; of actual malice, also known as constitutional malice, or malice in fact. See, e.g., *Gambardella v. Apple Health Care, Inc.*, [291 Conn. 620, 634, 969 A.2d 736 (2009)] (commonlaw intracorporate communications privilege); *Goodrich v. Waterbury Republican-American, Inc.*, [188 Conn. 107, 114-15, 119-20, 448 A.2d 1317 (1982)] (fair comment privilege); see also *Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 99 (2d Cir. 2000) ('[t]he critical difference between common-law malice and constitutional malice, then, is that the former focuses on the defendant's attitude toward the plaintiff, the latter on the defendant's attitude toward the truth')." *Gleason v. Smolinski*, supra, 319 Conn. 433 n.32.

"[M]alice is not restricted to hatred, spite or ill will against a plaintiff, but includes any improper or unjustifiable motive.  [A] qualified privilege is lost upon a showing of either actual malice, i.e., publication of a false statement with actual knowledge of its falsity or reckless disregard for its truth, or malice in fact, i.e., publication of a false statement with bad faith or improper motive. Indeed . . . a showing of either actual malice or malice in fact suffices to defeat a qualified privilege in defamation cases  . . . ." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Gambardella v. Apple Health Care, Inc.*, supra, 291 Conn. 630-31. "[A]ctual malice requires a showing that a statement was made with knowledge that it was false or with reckless disregard for its truth.  A negligent misstatement of fact will not suffice; the evidence must demonstrate a purposeful avoidance of the truth.  Further, proof that a defamatory falsehood has been uttered with bad or corrupt motive or with an intent to inflict harm will not be

sufficient to support a finding of actual malice . . . although such evidence may assist in drawing an inference of knowledge or reckless disregard of falsity." (Citations omitted; internal quotation marks omitted.) Id., 637-38.

So, as the elements apply to this case to prevail on a common law defamation claim, Mr. Ambrose must show: 1) Mr. Parlato published false statements about Mr. Ambrose, 2) the false statements caused pecuniary harm, and 3) since Mr. Parlato is a member of the press, that Mr. Parlato's statements were made with actual malice or reckless disregard for the truth, or with bad faith or improper motive.

Mr. Parlato submits that Counts 1 and 3, though styled as "Invasion of Privacy by False Light at Common Law and the Second Restatement of Torts" and "Intentional Infliction of Emotional Distress," respectively, are actually recast Common Law Defamation claims. The elemental analysis becomes the same.

2.  Invasion of Privacy by False Light at Common Law and the Second Restatement of Torts

Connecticut                follows              the Second Restatement of Torts definition of false light invasion of privacy, which requires a showing that: "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Goodrich v. Waterbury Republican-Am., Inc.*, 188 Conn. 107, 131, 448 A.2d 1317 (1982) (citing to 3 Restatement (Second), Torts § 652E). *See also Borg v. Cloutier*, 200 Conn. App. 82, 109, 239 A.3d 1249 (2020) (same).

The essence of a false light privacy claim is that the matter published concerning the plaintiff (1) is not true, and the Defendant had knowledge of or acted in reckless disregard as to

the falsity of the publicized matter. and (2) is such a 'major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position.'" *Id. Kennedy v. Caruso*, No. 3:19-cv-260(VLB), 2021 U.S. Dist. LEXIS 224172, at *59-60 (D. Conn. Nov. 19, 2021).

Here, Mr. Ambrose fails to plead that Mr. Parlato's publication of facts satisfies the actual knowledge or reckless disregard of the element of the tort.   The allegations that Mr. Parlato published stories based upon already-public documents are not actionable.   The allegations that Mr. Parlato published stories based upon interviews and opinions are not actionable.

There are no allegations that Mr. Parlato published stories based upon statements that were patently false or that any reasonable person would find to be false.   Mr. Ambrose fails to identify anything that Mr. Parlato published that was even remotely actionable.   Mr. Ambrose makes these specified allegations against Mr. Parlato in his complaint:

**A. Parlato maliciously and falsely published that Plaintiff is a pedophile who sexually abused his own children. (Page 8)**

Mr. Ambrose admits the Multi-Disciplinary Task Force at Yale New Haven Hospital made a report that made disturbing disclosures of a sexual nature.  Mr. Ambrose does not deny the report.   Yale isn't being sued.   Mr. Parlato's reporting is based upon the Yale Report and is not actionable.

**B. Parlato maliciously and falsely published that Plaintiff admitted to viewing child pornography and that he is attracted to children. (page 9)**

Mr. Ambrose admits that there was a custody evaluation.  The reporting by Mr. Parlato is based on the custody evaluation by the Connecticut Family Court.  Mr. Ambrose does not deny

the report.  Neither the Connecticut Family Court nor the Evaluator is being sued.  Mr. Parlato's

reporting is based upon the Family Court Evaluator's report and is not actionable.

### C. Parlato maliciously and falsely published that Plaintiff admitted to viewing gay pornography and to producing child and gay pornography. (page 11)

Mr. Ambrose admits that there was a forensic evaluation of his computer.  Mr. Ambrose

does not deny the findings.  Mr. Ambrose only denies the expert methodology, which is in and of

itself newsworthy.   The reporting by Mr. Parlato is based on the forensic evaluation.   Mr.

Ambrose does not deny the actual report.  The Forensic Evaluator is not being sued.  Mr. Parlato's

reporting is based upon Forensic Evaluator's report and is not actionable.

### D. Parlato maliciously and falsely published that Plaintiff stole over $1 million from Riordan as well as an alleged six-figure inheritance. (page 11)

Mr. Ambrose is a party to the lawsuit *Ambrose v. Ambrose*, FBT-FA-19-6088163-S (Sup.

Ct. Conn).  Mr. Ambrose knows the allegations of both parties.  Mr. Ambrose knows that all of the

allegations reported by Mr. Parlato were allegations contained in the filed court documents.  Mr.

Ambrose does not deny it.  The reporting by Mr. Parlato is based on the filed court documents and

the allegations contained therein.  Ms. Riordan is not being sued.  The Connecticut Superior Court

is not being sued.  Mr. Parlato's reporting is based upon claims made in filed court documents and

is not actionable.

### E. Parlato maliciously and falsely published that Plaintiff is a "deadbeat" who did not financially support his wife once he filed for divorce in July 2019. (page 13)

Again, Mr. Ambrose is a party to the lawsuit *Ambrose v. Ambrose*, FBT-FA-19-6088163-S

(Sup. Ct. Conn).  Mr. Ambrose knows the allegations of both parties.  Mr. Ambrose knows that all

of the allegations reported by Mr. Parlato were allegations contained in the filed court documents. Mr. Ambrose does not deny it. The reporting by Mr. Parlato is based on the filed court documents and the allegations contained therein. Ms. Riordan is not being sued. The Connecticut Superior Court is not being sued. Mr. Parlato's reporting is based upon claims made in filed court documents and is not actionable.

**F. Parlato falsely and maliciously published that Plaintiff "hates" his children and was an absentee parent who abused his children by among other things, keeping them "caged," keeping them medicated, preventing them from communicating with anyone, isolating them from Riordan's extended family and friends. (page 14)**

Again, Mr. Ambrose is a party to the lawsuit *Ambrose v. Ambrose*, FBT-FA-19-6088163-S (Sup. Ct. Conn). Mr. Ambrose knows the allegations of both parties. Mr. Ambrose knows that all of the allegations reported by Mr. Parlato were allegations contained in the filed court documents. Mr. Ambrose does not deny it. The reporting by Mr. Parlato is based on the filed court documents and the allegations contained therein. Ms. Riordan is not being sued. The Connecticut Superior Court is not being sued. Mr. Parlato's reporting is based upon claims made in filed court documents and is not actionable.

Moreover, if this case is not dismissed, Mr. Ambrose has (wittingly or unwittingly) made his children witnesses in this case. Truth is a complete defense. If the children were truly traumatized before, why would Mr. Ambrose do this to them?

**G. Parlato falsely and maliciously published that Plaintiff was awarded custody because he lied in an affidavit and prevents Riordan from seeing the children. (page 18)**

Again, Mr. Ambrose is a party to the lawsuit *Ambrose v. Ambrose*, FBT-FA-19-6088163-S (Sup. Ct. Conn). Mr. Ambrose knows the allegations of both parties. Mr. Ambrose knows that all

of the allegations reported by Mr. Parlato were allegations contained in the filed court documents. Mr. Ambrose does not deny it. The reporting by Mr. Parlato is based on the filed court documents and the allegations contained therein. Ms. Riordan is not being sued. The Connecticut Superior Court is not being sued. Mr. Parlato's reporting is based upon claims made in filed court documents, and by Ms. Riordan, and is not actionable.

**H. Parlato falsely and maliciously published that Plaintiff always wanted sole custody and all the marital assets for himself so he lied and colluded with and/or bribed the court-appointed Guardian ad Litem, custody evaluator and others. (page 19)**

Again, Mr. Ambrose is a party to the lawsuit *Ambrose v. Ambrose*, FBT-FA-19-6088163-S (Sup. Ct. Conn). Mr. Ambrose knows the allegations of both parties. Mr. Ambrose knows that all of the allegations reported by Mr. Parlato were allegations contained in the filed court documents. Mr. Ambrose does not deny it. The reporting by Mr. Parlato is based on the filed court documents and the allegations contained therein. Ms. Riordan is not being sued. The Connecticut Superior Court is not being sued. Mr. Parlato's reporting is based upon claims made in filed court documents, and by Ms. Riordan, and is not actionable.

**I. Parlato falsely and maliciously published that Plaintiff illicitly colluded with the GAL, custody evaluator, attorneys, judges, police officers and detectives, DCF investigators and caseworkers, hospital doctors, nurses and social workers, elected and appointed public officials and others in a vast "RICO" conspiracy to deprive Riordan of custody and her due process rights.**

Again, Mr. Ambrose is a party to the lawsuit *Ambrose v. Ambrose*, FBT-FA-19-6088163-S (Sup. Ct. Conn). Mr. Ambrose knows the allegations of both parties. Mr. Ambrose knows that all of the allegations reported by Mr. Parlato were allegations contained in the filed court documents.

Mr. Ambrose does not deny it.  The reporting by Mr. Parlato is based on the filed court documents and the allegations contained therein.  Ms. Riordan is not being sued.  The Connecticut Superior Court is not being sued.  Mr. Parlato's reporting is based upon claims made in filed court documents, and by Ms. Riordan, and is not actionable.

   **J. Parlato falsely and maliciously published that Plaintiff misrepresented his sexuality and was unfaithful during marriage by leading a "double life" that included an illicit "gay lover" and "multiple, multi-year affairs." (page 24)**

   Again, Mr. Ambrose is a party to the lawsuit *Ambrose v. Ambrose*, FBT-FA-19-6088163-S (Sup. Ct. Conn).  Mr. Ambrose knows the allegations of both parties.  Mr. Ambrose knows that all of the allegations reported by Mr. Parlato were allegations contained in the filed court documents.  Mr. Ambrose does not deny it.  The reporting by Mr. Parlato is based on the filed court documents and the allegations contained therein.  Ms. Riordan is not being sued.  The Connecticut Superior Court is not being sued.  Mr. Parlato's reporting is based upon claims made in filed court documents, and by Ms. Riordan, and is not actionable.

   **K. Parlato maliciously and falsely publishes that Plaintiff is psychologically unwell, has a drinking problem, anger issues and is paranoid and delusional. (page 25)**

   Mr. Ambrose admits Mr. Parlato conducted an interview with Michelle Pawlina, who works in the psychiatric field.. Ms. Pawlina was offering her opinion based upon her experience and knowledge of the facts.  Mr. Parlato merely reported it.  Mr. Ambrose does not deny the report.  Ms. Pawlina isn't being sued.  Mr. Parlato's reporting is based upon the opinions expressed in an interview and not actionable.

   Accordingly, none of the factual claims enumerated by Mr. Ambrose allege actionable activity.  Nothing Mr. Parlato allegedly did was malicious as a matter of fact or law.  Mr.

Ambrose's alleged "Invasion of Privacy by False Light at Common Law and the Second Restatement of Torts" is just another statement of a defamation claim.

Thus, the "Invasion of Privacy by False Light at Common Law and the Second Restatement of Torts claim" as pleaded and should be stricken on that basis alone. Additionally, Defendant is prejudiced as described below.

3.   <u>Intentional Infliction of Emotional Distress</u>

To prevail on a claim for intentional infliction of emotional distress, a plaintiff must plead and prove that (1) the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's conduct was the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was severe. *Diamond v. Yale University*, 66 Conn.App. 764, 765-66, 786 A.2d 518 (2001).

Mr. Ambrose's allegations are limited to Mr. Parlato's words. Consequences of the "conduct" of the written and spoken word are redressed by the cause of action for defamation.

Mr. Ambrose does not allege facts that Mr. Parlato specifically targeted Mr. Ambrose with any threats that would cause emotional distress. It is not alleged that Mr. Parlato made threatening phone calls or sent threatening emails. It is only alleged that Mr. Parlato wrote several stories about Mr. Ambrose. The activity rings of libel, or defamation in the written word.

Mr. Parlato never intended nor should he have known that emotional distress would be the result of his written words on an Open Internet site. Moreover, the freedom of the press trumps Mr. Ambrose's right not to feel "emotional distress" when there is no objective manifestation of objective facts that support the same and no outrageous conduct by Mr. Parlato. Investigating and reporting news is not extreme and outrageous conduct.

21

Mr. Ambrose's alleged emotional distress is just another species of alleged damages under the defamation claim.

Thus, the Intentional Infliction of Emotional Distress Claim is duplicative of a Common Law Defamation claim as pleaded and should be stricken on that basis alone.    Additionally, Defendant ais prejudiced as described below.

## B.  Mr. Parlato is Prejudiced

Mr. Parlato is prejudiced for two major reasons.    First, Mr. Ambrose should not be permitted to disguise a defamation claim as another claim to circumvent jurisdiction that the Connecticut law clearly does not allow.   General Statutes §52-59b(a) provides in relevant part:

> "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association, or over the executor or administrator of such nonresident individual, foreign partnership or foreign voluntary association, who in person or through an agent . . . (2) commits a tortious act within the state, *except as to a cause of action for defamation of character arising from the act . . .*" (Emphasis added.)

Defamation is explicitly and specifically excluded from Connecticut's long-arm statute. Though Mr. Ambrose claims that he was harmed in other ways than defamation, the Complaint has not alleged the facts to support it.

Second, and relatedly, Mr. Ambrose knows that Mr. Parlato is a journalist and a member of the media.    Mr. Parlato and all journalists and media members similarly situated would be prejudiced if the Connecticut courts allow an end-run around the Legislature's clear pronouncement that defamation is explicitly not subject to long-arm jurisdiction.    The chilling effects on free speech and the press would not be prejudicial to just Mr. Parlato and other

journalists but to the Marketplace of Ideas as a whole, and would be Constitutionally impermissible.

Accordingly, the Court should strike Counts 1 and 3 in Mr. Ambrose's complaint.0

**THE COURT SHOULD DISMISS THIS CASE UDNDER FRCP RULE 12(b)(2) BECAUSE THERE IS NO JURISDICTION OVER MR. PARLATO IN CONNECTICUT**

Mr. Ambrose, as the proponent of jurisdiction, has the burden of establishing that this Court has personal jurisdiction over Mr. Parlato. *Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir. 1990). No discovery has been conducted to date on this issue. In consequence, at this initial stage Mr. Ambrose need only allege facts constituting a *prima facie* showing of personal jurisdiction. *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997).

At this stage, the Court construes pleadings and affidavits in Mr. Ambrose's favor. *Id.* Even with a charitable reading of the Complaint, the Court should not find jurisdiction over Mr. Parlato.

In Connecticut, "a trial court may exercise jurisdiction over a foreign defendant only if the defendant's intrastate activities meet the requirements both of [the state's long-arm] statute and of the due process clause of the federal constitution." Thomason v. Chem. Bank, 234 Conn. 281, 285-86, 661 A.2d 595 (1995). "[The] first inquiry must be whether our long-arm statute authorizes the exercise of jurisdiction under the particular facts of this case. Only if we find the statute to be applicable do we reach the question whether it would offend due process to assert jurisdiction." Lombard Bros., Inc. v. Gen. Asset Mgmt. Co., 190 Conn. 245, 250, 460 A.2d 481 (1983); Cousteau Soc'y, Inc. v. Cousteau, 498 F. Supp. 3d 287, 301 (D. Conn. 2020).

Long Arm Statute Analysis

The Connecticut Long Arm Statute, General Statutes §52-59b(a) provides in relevant part:

> "As to a cause of action arising from any of the acts enumerated in
> this section, a court may exercise personal jurisdiction over any
> nonresident individual, foreign partnership or foreign voluntary
> association, or over the executor or administrator of such

24

nonresident individual, foreign partnership or foreign voluntary association, who in person or through an agent . . . (2) commits a tortious act within the state, *except as to a cause of action for defamation of character arising from the act* . . ." (Emphasis added.)

Defamation is explicitly and specifically excluded from Connecticut's long-arm statute. Though Mr. Ambrose claims that he was harmed in other ways than defamation, the Complaint has not alleged the facts to support it. And the Connecticut law is clear:

A chief executive officer was not subject to personal jurisdiction under Conn. Gen. Stat. § 52-59b based on defamation claims. The courts did not favor subjecting a nonresident to long-arm jurisdiction by allowing the statute's broad and undefined concept of "transacting business" to trump its explicit and unambiguous exclusions of long-arm jurisdiction for defamation. Lego A/S v. Best-Lock Constr. Toys, Inc., 886 F. Supp. 2d 65, 2012 U.S. Dist. LEXIS 120665 (D. Conn. 2012).

Courts do not favor subjecting an individual nonresident utterer of defamation, however hurtful or unfair, to long-arm jurisdiction by allowing the long-arm statute's broad and undefined concept of "transacting business" to trump its explicit and unambiguous exclusions of long-arm jurisdiction for "a cause of action for defamation of character." The United States District Court for the District of Connecticut agrees with that weight of authority. Lego A/S v. Best-Lock Constr. Toys, Inc., 886 F. Supp. 2d 65, 2012 U.S. Dist. LEXIS 120665 (D. Conn. 2012).

District court properly dismissed out-of-state defendants from plaintiff's defamation action because it lacked personal jurisdiction over them under Connecticut's long-arm statute, which did not violate plaintiff's First Amendment right to petition or Fourteenth Amendment right to equal protection. Friedman v. Bloomberg L.P., 884 F.3d 83, 2017 U.S. App. LEXIS 27729 (2d Cir. Conn. 2017).

Mr. Parlato believes that the entire Complaint sounds in defamation and should be dismissed because Mr. Ambrose has only plausibly plead facts to support a defamation cause of action.

Assuming *arguendo* that there are claims additional to defamation, the Court should similarly find that there is no jurisdiction over Mr. Parlato. The objectionable conduct all occurred on Mr. Parlato's Websites, and the Websites did not cause any cognizable legal harm in Connecticut.

Courts in this district have drawn a distinction between active and passive websites for purposes of the exercise of personal jurisdiction. See Kun Shan Ge Rui Te Tool Co. v. Mayhew Steel Prods., Inc., 821 F. Supp. 2d 498, 503 (D. Conn. 2010); see also Best Van Lines, Inc. v. Walker, 490 F.3d 239, 251-52 (2d Cir. 2007) (explaining that a website's interactivity assists inquiry into whether a defendant has transacted business, under the New York long-arm statute, or purposefully availed himself of the privilege of doing business in a state, under the due process analysis).

Active websites are those "where individuals can directly interact with a company over their Internet site, download, transmit[,] or exchange information, and enter into contracts with the company via computer." On-Line Techs. v. Perkin Elmer Corp., 141 F. Supp. 2d 246, 265 (D. Conn. 2001). Active websites may support an exercise of personal jurisdiction.

On the other end of the continuum, "[p]assive websites that require a potential customer to initiate contact with the foreign corporation by telephone, mail, or email, rather than allowing them to order directly over the Internet, cannot support personal jurisdiction." Mayhew Steel Prods., 821 F. Supp. 2d at 503; see also On-Line Techs., 141 F. Supp. 2d at 265 (discussing passive websites).

"The middle ground between the two extremes involves sites where parties can interact with the defendant company, but may not be able to contract with the company or make purchases over the Internet site; in such situations, most courts follow . . . <u>Zippo Manufacturing Co. v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119 (W.D. Pa. 1997)[,] and determine whether jurisdiction is proper by 'examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.'" <u>On-Line Techs</u>, 141 F. Supp. 2d at 265 (quoting <u>Zippo Mfg.</u>, 952 F. Supp. at 1124).

Mr. Parlato's Websites unlike the websites described in <u>Mashantucket Pequot Tribe v. Raymond Redican</u>, 309 F. Supp. 2d 309, 02cv1828 (JCH)(finding personal jurisdiction in Connecticut based on operation of a website that targeted Foxwoods' customers) or <u>NFL v. Miller</u>, 2000 U.S. Dist. LEXIS 3929, 2000 WL 335566 (S.D.N.Y. 2000)(finding personal jurisdiction in New York based on website targeting NFL fans). Mr. Parlato's website is closer to the website in <u>Estate of Nunez-Polanco v. Boch Toyota, Inc.</u>, 339 F. Supp. 2d 381, 384 (D. Conn. 2004) where the court dismissed the complaint.

But specifically, Mr. Parlato's Websites are not engaged in commercial activity. The Websites disseminate the news. The Websites did not specifically target individuals in Connecticut or individuals who would be likely to view the website on a computer screen in Connecticut any more than any person in the United States or around the world. Accordingly, Mr. Parlato cannot be subject to suit based on "tortious conduct in this state" or any other provision of the long-arm statute.

The Court should dismiss the Complaint against Mr. Parlato at this juncture.

<u>Due Process Inquiry</u>

The second part of the jurisdictional analysis requires the court to determine whether the exercise of jurisdiction over Mr. Parlato is consistent with due process. See Sha-Na-Na, 637 F.Supp. at 595. "A two-step analysis is used when determining whether the exercise of personal jurisdiction would offend Due Process: (1) does the defendant have minimum contacts with the forum; and, if, so, (2) does the assertion of jurisdiction comport with traditional notions of fair play and substantial justice." In Re Perrier Bottled Water Litig., 754 F. Supp. 264, 267-68 (D. Conn. 1990) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)).

### Minimum Contacts

"'[T]he constitutional touchstone' of the determination whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposefully established 'minimum comtacts' in the forum State.'" Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 108-09, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). Thus, evaluating Mr. Parlato's minimum contacts with Connecticut requires a determination of whether there has been some act by Mr. Parlato to purposefully avail himself of the privilege of doing business in the forum state such that it has invoked the benefits and protections of its laws. Asahi, 480 U.S. at 108-09 (citing Burger King, 471 U.S. at 475). "Jurisdiction is proper, where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." Burger King, 471 U.S. at 475 (citing McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957)).

Courts look to Zippo to determine whether a defendant has purposefully availed itself of the privilege of conducting business in the forum state via an Internet website. See Zippo Mfg. Co.

V. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997). It should be recognized, however, that Zippo did not create a separate test for analyzing jurisdiction based on a defendant's Internet presence. Rather, Zippo stated that its "sliding scale is consistent with well-developed personal jurisdiction principles." Id. at 1124. Thus, applying the Zippo sliding scale of interactivity is merely the use of a new tool to measure a defendant's commercial activity within the forum state via its website , which is then to be applied to traditional jurisdiction principles.

As discussed above, Mr. Parlato has the Websites where Connecticut residents could read news and investigative journalism.  This is Free Speech activity.  There is nowhere where a user can purchase products or services.   Neither Mr. Parlato nor the Websites conduct business with Connecticut residents over the Internet.  Any connection is relevant to the exchange of ideas in the Open Public Square of Free Speech.   Thus, there is no substantial connection with Connecticut. Mr. Ambrose has not shown any purposeful availment of the privilege of conducting business in Connecticut that was of a continuing and systematic nature sufficient to support general personal jurisdiction.  Cf., generally, ICG America, Inc. v. Wine of the Month Club, Inc., No. 3:09-cv-133 (PCD), 2009 U.S. Dist. LEXIS 77151, 2009 WL 2843261, at *7 (D. Conn. 2009) ("Defendant purposefully availed itself to the privilege of doing business in Connecticut. Its   interactive,   commercial website invites   consumers   'from   any   state,' including Connecticut, to purchase its products. By operating a commercial website to promote and sell its goods, Defendant has extended itself beyond its home state of California to avail itself of the benefits of doing business in Connecticut.") (citation omitted); Indiaweekly.com, Civil Action No. 3:07-cv-194 (VLB), 2008 U.S. Dist. LEXIS 18056, 2008 WL 687268, at *4 (D. Conn. 2008) ("Courts in this district have held that exercising personal jurisdiction over defendants based on the presence of an active website does not offend due process."); National

Football League v. Miller, No. 99 CIV. 11846 JSM, 2000 U.S. Dist. LEXIS 3929, 2000 WL 335566, at *1 (S.D.N.Y. 2000) ("[O]ne who uses a web site to make sales to customers in a distant state can thereby become subject to the jurisdiction of that state's courts.").

The Edberg case stands for the proposition that mere presence on the Internet is never enough to justify a court's exercise of general jurisdiction. See Edberg v. Neogen Corp., 17 F. Supp. 2d 104, 115 (D. Conn. 1998) ("If jurisdiction were [to] be based upon a defendant's mere presence on the Internet, this would lead to a defendant's being subjected to jurisdiction on a worldwide basis and would eviscerate the personal jurisdiction requirements as they currently exist.").

Mr. Parlato merely has an Internet presence.  Any interactivity on the Websites whereby it invited Connecticut Internet users to participate, was in further of Free Speech and not commercial ends.

### Fair Play and Substantial Justice

The second part of the due process inquiry requires an assessment of whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996). This inquiry is framed by the following five factors: "1) the burden that the exercise of jurisdiction will impose on the defendant; 2) the interests of the forum state in adjudicating the case; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and 5) the shared interest of the states in furthering substantive social policies." Id. (citing Asahi Metal Indus. Co., Ltd. v. Superior Court, 480 U.S. 102, 113-14, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)).

All factors weigh in favor of the conclusion that the court's exercise of jurisdiction over Mr. Parlato is inconsistent with fair play and substantial justice.

Mr. Parlato is not a media giant. He is a small media outlet. The burden on Mr. Parlato by requiring him to defend the suit in Connecticut is substantial.

The forum state has no interest in seeing the system manipulated by an attorney for personal gain in order to curtail the rights of the free press and circumvent the letter and spirit of the Connecticut Statutes.

Requiring the Plaintiff, an attorney, to litigate this case in another forum where jurisdiction properly lies would neither be inconvenient nor unduly burdensome for him.

Moreover, the judicial system's interest would be vindicated by disallowing jurisdiction in this forum, as there are no other defendants in this case who will be defending against the plaintiffs' claims in Connecticut. Duplicative litigation in another forum would be a waste of judicial resources,and that concern is not present here.

The Court should finds that asserting jurisdiction over Mr. Parlato does not comports with due process and is contrary to notions of fair play and substantial justice.

For the foregoing reasons, the plaintiffs have failed to make a <u>prima facie</u> case as to the proper exercise of personal jurisdiction by this Court over defendant Mr. Parlato. Further, Mr. Parlato has shown that his journalism and media activities via the Websites are insufficient to satisfy the requirements of Connecticut's long-arm statute. Exercising personal jurisdiction over Mr. Parlato because of such activities would violate principles of due process.

### <u>THE COURT SHOULD DISMISS THIS CASE UDNDER FRCP RULE 12(b)(4) AND (5) BECAUSE MR. PARLATO WAS NOT PERSONALLY SERVED</u>

Mr. Parlato makes this claim to preserve his right to dismiss the matter for improper service.

"Proof of service must be made to the court." Fed. R. Civ. P. 4(*l*)(1).

Plaintiffs v. United States Postal Serv. Defendants, No. 3:19-CV-1295 (VLB), 2020 U.S. Dist. LEXIS 268063, at *3 (D. Conn. May 29, 2020).

Plaintiffs have submitted neither a return of service nor any other evidence of service.

Accordingly, the Court should dismiss this case.

### THE COURT SHOULD DISMISS THIS CASE UDNER FRCP RULE 12(b)(6) BECAUSE MR. AMBROSE FAILS TO PLEAD A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Mr. Ambrose fails to state causes of action upon which relief may be granted.  As stated supra. In the section on the motion to strike, counts 1 and 3 are duplicative of a defamation claim.

Additionally, actual malice is a fact that must be plead.  Mr. Ambrose has not pleaded facts to support a claim of actual malice

Accordingly, the Court should dismiss this case.

### THE COURT SHOULD DISMISS THIS CASE UNDER *FORUM NON CONVENIENS*

Courts determine whether to dismiss an action based on *forum non conveniens* applying a three-step inquiry. Norex Petroleum, Ltd. v. Access Indus., 416 F.3d 146 (2d Cir. 2005); Overseas Media, Inc. v. Skvortsov, 277 F. App'x 92, 96 (2d Cir. 2008).  First, the court must determine "the degree of deference properly accorded the plaintiff's choice of forum." *Id.* Second, the court must "consider[] whether the alternative forum proposed by the defendants is adequate to adjudicate the

parties' dispute." *Id.* And finally, a court must "balance[] the private and public interests implicated in the choice of forum." *Id.*

As stated above, the interests do not favor Mr. Parlato's litigation of this claim in Connecticut. All factors weigh in favor of the conclusion that the Court's should dismiss this case..

Mr. Parlato is not a media giant. He is a small media outlet. The burden on Mr. Parlato by requiring him to defend the suit in Connecticut is substantial.

The forum state has no interest in seeing the system manipulated by an attorney for personal gain in order to curtail the rights of the free press and circumvent the letter and spirit of the Connecticut Statutes.

Requiring the Plaintiff, an attorney, to litigate this case in another forum where jurisdiction properly lies would neither be inconvenient nor unduly burdensome for him.

Moreover, the judicial system's interest would be vindicated by disallowing jurisdiction in this forum, as there are no other defendants in this case who will be defending against the plaintiffs' claims in Connecticut. Duplicative litigation in another forum would be a waste of judicial resources, and that concern is not present here.

The Court should finds that asserting jurisdiction over Mr. Parlato does not comports with due process and is contrary to notions of fair play and substantial justice.

Accordingly, the Court should dismiss this case

### AS A LAST RESORT, THE COURT SHOULD TRANSFER THIS CASE TO FLORIDA BECAUSE IT IS UNDULY BURDENSOME FOR MR. PARLATO TO DEFEND IN CONNECTICUT

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division *in which it could have been brought*. 28 U.S.C. § 1406(a). Whether dismissal or transfer is appropriate lies within the sound discretion of the district court. *See* Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993); Naartex Consulting Corp. v. Watt, 232 U.S. App. D.C. 293, 722 F.2d 779, 789 (D.C. Cir. 1983), *cert. denied*, 467 U.S. 1210, 81 L. Ed. 2d 355, 104 S. Ct. 2399 (1984); 15 Charles A. Wright et al., *Federal Practice and Procedure* § 3827, at 261-62 (2d ed. 1986).

If the Court does not see fit to dismiss this case against Mr. Parlato, the Court should transfer the case to the U.S. District Court for the Southern District of Florida, Key West Division, where the equities make it much less burdensome for him to defend.

Accordingly, as a last resort, this case should be transferred to the U.S. District Court for the Southern District of Florida, Key West Division

**WHEREFORE**, Defendant Frank Parlato, Jr., respectfully moves this Honorable Court for an Order:

a) Striking Counts 1 and 3 pursuant to Rule 12(f) of the Federal Rule of Civil Procedure (FRCP) as duplicative of Count 2; or

b) Striking Counts 1 and 3 pursuant to FRCP Rule 12(f) as improperly plead, unsuccessful in law and fact, and prejudicial; and

c) Dismissing this matter pursuant to FRCP Rule 12(b)(2); or in the alternative

d) Dismissing this matter pursuant to FRCP Rule 12(b)(4); or in the alternative

e) Dismissing this matter pursuant to FRCP Rule 12(b)(5); or in the alternative

34

f) Dismissing this matter pursuant to FRCP Rule 12(b)(6); or in the alternative

g) Dismissing this matter pursuant to the doctrine of *Forum Non-Conveniens*; or in the alternative

h) Transferring this matter to the United States District Court for the Southern District of Florida, Key West Division; and

i) For such other and further relief as this Honorable Court shall deem just and equitable.

Dated:   Big Pine Key, Florida
         December 15, 2022

Respectfully submitted,

FRANK PARLATO, JR.
29009 Geranium Drive
Big Pine Key, Florida 33043
Tel:      (305) 783-7083
Email:   frankparlato@gmail.com

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent via electronic mail and first-class mail, postage prepaid, this 15th day of December 2022 to:

Christopher A. Ambrose
381 Horsepond Road
Madison, CT 06443
203.505.1889
ca0515@aol.com

FRANK PARLATO, JR.
29009 Geranium Drive
Big Pine Key, Florida 33043
Tel:      (305) 783-7083
Email:   frankparlato@gmail.com

**UNITED STATES DISTRICT COURT**
**District of Connecticut**
**New Haven Division**

-----------------------------------------------
CHRISTOPHER A. AMBROSE,

              Plaintiff,

     V.                        Case No. _____

FRANK PARLATO, JR.,

              Defendant.
-----------------------------------------------

### DECLARATION OF DEFENDANT FRANK PARLATO, JR.

Defendant Frank Parlato, Jr., declares the truth of the following under penalty of perjury:

1.   I am a reporter, investigative journalist, and publisher of news.

**2.**   I was never served with the Complaint in this matter which is attached herewith as **EXHIBIT "A."**

3.   I have several media outlets where I publish my reporting. Relevant to this matter, those sites are The Frank Report (www.frankreport.com) and Art Voice (www.artvoice.com) (together the "Websites"), which are both website-only media outlets.

4.   Neither I nor the Websites transact business in Connecticut.

5.   The Websites do not allow users to buy or sell anything.

6.   The only commodity that I offer is Free Speech: investigative journalism, newsgathering, and reporting.

7.   Users may comment on the releases or posts on the Websites. Again, the Websites are Free Speech platforms.

8.   Neither I nor the Websites have contracts to be performed in Connecticut.

9.   Neither I nor the Websites solicit business in Connecticut or provide advertising specific to Connecticut.

10.  If I am liable for anything, it is for the dissemination of investigative journalism, newsgathering, and reporting into the free market of ideas – Constitutionally protected activity.

11.  I committed no tortious conduct in Connecticut. The Websites do not promote commercial activity beyond protected free speech.

12.  The Websites do not specifically target individuals in Connecticut or individuals who would be likely to view the website on a computer screen in Connecticut for commercial purposes.

13.  I have not directed his activities on the Websites so that they would be particularly reviewed or read by persons in Connecticut.

14.  I have not made any statements on the Websites that he believed would affect persons in Connecticut beyond the reporting of the news.

15.  I have not transmitted his allegedly harmful statements into the Connecticut jurisdiction using the mails or the wires of the United States.

16.  I and the Website disseminate information towards a general audience, which may be comprised of Connecticut readers as well as anyone else globally.

17.  The information objectionable to Mr. Ambrose attributable to me and the Websites is all posted on an Open Internet forum that could be viewed by anyone in the world.

18.  There is no allegation or proof that any of the posts allegedly written by me were directly and expressly targeted at Connecticut.

19.  Any emails to Mr. Ambrose were directly and expressly sent for legitimate journalistic purposes (i.e. – requesting comment).  Mr. Ambrose does not allege that any of these news-gathering emails were tortious in nature.

20. Mr. Ambrose's allegations in favor of personal jurisdiction are premised solely on Mr. Parlato and the Websites' Internet postings, all of which were premised upon proper journalistic practices.

21. I and the Websites have transmitted information <u>about</u> Mr. Ambrose on an Open Internet forum as part of its reporting activities.   Neither I nor the Websites have specifically targeted Mr. Ambrose by threatening his life or safety.

22. Accordingly, I do not believe I should be subject to suit in Connecticut based on "tortious conduct in this state.." or any other provision of the long-arm statute.

23. The only real claim that Mr. Ambrose has claim is defamation.

24. Assuming for the sake of argument that the defamation claim survives jurisdictional and due process analysis, Connecticut law requires a defamation action to be served by hand.

25. I was never served with legal process in this case, by hand or otherwise.

26. The Court should strike the requested portions of the Complaint and dismiss the complaint for the reasons state din the Memorandum of Law.

Dated:       Big Pine Key, Florida                        Respectfully submitted,
             December 15, 2022


                                                          FRANK PARLATO, JR.
                                                          29009 Geranium Drive
                                                          Big Pine Key, Florida 33043
                                                          Tel:     (305) 783-7083
                                                          Email: frankparlato@gmail.com

## UNITED STATES DISTRICT COURT
### District of Connecticut
### New Haven Division

-------------------------------------------------

CHRISTOPHER A. AMBROSE,

        Plaintiff,

     V.                                              Case No. _____

FRANK PARLATO, JR.,

        Defendant.

-------------------------------------------------


## CERTIFICATION OF SERVICE

     This is to certify that a copy of the foregoing NOTICE OF REMOVAL, MOTION TO DISMISS, MEMORANDUM OF LAW, and DECLARATION OF FRANK PARLATO, JR., has been sent via electronic mail and first-class mail, postage prepaid, this 15th day of December 2022 to:

     Christopher A. Ambrose
     **381 Horsepond Road**
     **Madison, CT 06443**
     **203.505.1889**
     ca0515@aol.com


                     FRANK PARLATO, JR.
                     29009 Geranium Drive
                     Big Pine Key, Florida 33043
                     Tel:    (305) 783-7083
                     Email:  frankparlato@gmail.com