
JAN 17 2023 PM 12:50
FILED-USDC-CT-NEW-HAVEN

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

CHRISTOPHER AMBROSE      *

           Plaintiff      *

v.      *      CIVIL ACTION NO. 3:2022CV01648

FRANK PARLATO, JR.      *

           Defendant      *

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO REMAND TO STATE COURT

This action, originally filed by the *pro se* Plaintiff, Christopher Ambrose, in Superior Court in New Haven on July 21, 2022, comes before the Court after the *pro se* Defendant, Frank Parlato, Jr., filed for its removal on December 27, 2022. Defendant asserts that removal is proper pursuant to 28 U.S.C. § 1332, 1441 and 1446 because this Court has original diversity jurisdiction, the amount in controversy exceeds $75,000, and the notice of removal was filed "within 30 days of service of legal process because the defendant has not been served [sic]." (Parlato Notice To Remove 3).

Plaintiff opposes Defendant's removal and seeks remand to the state court because Defendant's removal was untimely filed pursuant to 28 U.S.C. § 1446.  As explained below, Plaintiff properly served Defendant with the original action on or about July 18, 2022 under Conn. Gen. Stat. § 52-59b(a)(2) and (c) (the "Connecticut Long-Arm Statute").  Defendant filed a notice of removal in this Court on December 27, 2022, long after his 30-day deadline to do so had expired. As

1

explained in detail below: (1) Connecticut has personal jurisdiction over Defendant according to Conn. Gen. Stat. § 52-59b(a)(2); (2) Plaintiff effectuated proper service of the original action upon Defendant under Conn. Gen. Stat. § 52-59b(c); and (3) removal is not timely under 28 U.S.C. § 1446 because Defendant was properly served in July 2022 and did not file his Motion to Remove until December, well after the 30 day statutory deadline.

Before turning to the specific provisions of law which Plaintiff cites in support of his contention that this action should be remanded, he respectfully calls attention to the long-standing presumption against removal.

"In light of congressional intent to restrict federal court jurisdiction and the importance of preserving the independence of state governments, there is a 'strong presumption' against removal jurisdiction. Federal courts must narrowly construe removal statutes and resolve doubts in favor of remand." *Purdue Pharma. L.P. v. Kentucky,* 407 F.3d 208, 213 (2d Cir. 2013) (citing *Lupo v. Human Affairs Int'l Inc.,* 28 F.3d 269, 274 (2d Cir. 1994)). Furthermore, if a case is not properly before the district court, it may not consider the lawsuit's substance; instead, the court must dismiss or remand the case. *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994); *Pressroom Unions-Printers League Income Sec. Fund v. Continental Assurance Co.*, 700 F.2d 889, 893–94 (2d Cir.), cert. denied, 464 U.S. 845 (1983). The removing defendant bears the burden of establishing that a case falls within the federal court's removal jurisdiction. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09 (1941). Defendant has not met that burden here.

2

Now, taking each component of Plaintiff's argument in turn:

### 1. **Connecticut Has Personal Jurisdiction Over Defendant**

To successfully defeat a motion to dismiss, the plaintiff bears the burden of showing that the court has personal jurisdiction over the defendant. *Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996). However, at this stage of the proceedings, the plaintiff must make out only a *prima facie* showing of personal jurisdiction. See *Edberg v. Neogen Corp.*, 17 F. Supp. 2d 104, 110 Case 3:15-cv-00516-VLB Document 77 Filed 03/31/16 Page 3 of 14 4 (D. Conn. 1998) (citing *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)). It is also important to note that courts construe the pleadings in the plaintiff's favor at this early stage. *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1109 (2d Cir. 1997) (internal citations omitted); *see also Jarrow Formulas, Inc. v. International Nutrition Co.,* 175 F.Supp.2d 296, 300 (D.Conn. 2001).

"The amenability of a nonresident to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits." *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963) (in banc); accord *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985). Accordingly, the laws of Connecticut apply here.

Under Connecticut law, to establish a *prima facie* case of personal jurisdiction over a defendant, a plaintiff must satisfy a two-part inquiry: "[f]irst, it must allege facts sufficient to show that Connecticut's long-arm statute reaches the defendant, and second, it must establish that the

3

court's exercise of jurisdiction will not violate due process." *Chirag v. MT Marida Marguerite Schiffahrts*, No. 3:12CV879 (SRU), 2013 WL 1223293, at *1 (D. Conn. Mar. 26 2013) (citing *Knipple v. Viking Communications, Ltd.*, 674 A.2d 426, 428–29 (Conn. 1996)). See also *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed. 2d 490 (1980); *International Shoe Co. v. Washington*, 326 U.s. 310,316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

**A. Connecticut's Long-Arm Statute reaches the Defendant.**

Connecticut General Statutes § 52-59b(a) governs the exercise of jurisdiction over nonresidents of the state. Under that statute, personal jurisdiction over a nonresident individual exists if the individual or his agent "commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act . . . ." Conn. Gen. Stat. § 52-59b(a)(2).

Connecticut has personal jurisdiction over Defendant Parlato under § 52-59b(a)(2) because he has committed tortious acts (invasion of privacy by false light, public disclosure of private facts and infliction of emotional distress) within the state by purposefully targeting Plaintiff as a resident of Connecticut, including by tortious communications posted to websites directed at a Connecticut audience.

Connecticut courts have held that a nonresident "commits a tortious act within the state" for purposes of § 52-59b(a)(2) by sending a communication whose content may be considered tortious directly into Connecticut. See, e.g., *Horniatko v. Riverfront Associates, LLC,* Superior Court, judicial district of Hartford, Docket No. CV-04-4000332, 2005 WL 1671543 (June 21,

2005) (Shapiro, J.) (39 Conn. L. Rptr. 566) (allegation that defendants made solicitation telephone calls to plaintiffs in Connecticut satisfies § 52-59[a][2] ); *Doe One v. Oliver*, Superior Court, judicial district of Waterbury, Docket No. CV-99-0151679, 2003 WL 21235402 (May 19, 2003) (Dubay, J.) (34 Conn. L. Rptr. 634) (allegation that a defendant sent e-mail containing offensive statements to recipients in Connecticut satisfies § 52-59b[a][2] ); *Oppenheim v. Erwin*, Superior Court, judicial district of New Haven, Docket No. CV-00-0441611, 2001 WL 419236 (April 10, 2001) (Licari, J.) (29 Conn. L. Rptr. 562) (allegation defendants sent a threatening letter to plaintiff in Connecticut satisfies § 52-59b[a][2]).

In *Knipple v. Viking Communications Ltd.*, 236 Conn. 602, 610, 674 A.2d 426 (1996), the Supreme Court held "[f]alse representations entering Connecticut by wire or mail constitute tortious conduct *in* Connecticut." (Emphasis added). Although in that case, the court was addressing the issue of personal jurisdiction under General Statutes § 33-411(c)(4), it cited with approval *David v. Weitzman*, 677 F.Supp. 95, 98 (D.Conn.1987), in which the District Court held that the transmission of fraudulent misrepresentations into Connecticut by mail or telephone was 'tortious conduct *in* Connecticut sufficient to establish personal jurisdiction under Connecticut's long-arm [statutes], §§ 33-411(c)(4) and 52-59b(a)(2).'" (Emphasis in original.) *Oppenheim v. Erwin, supra*, 29 Conn. L. Rptr. at 564. Therefore, a nonresident defendant need not be physically present in Connecticut at the time of the commission of the alleged tortious act for him to have "commit[ted] a tortious act within the state" for purposes of § 52-59b(a)(2).

Unlike the telephone, letter or e-mail cases, however, "[a]n internet posting is not 'sent' anywhere in particular, but rather can be accessed from anywhere in the world." *Dailey v. Popma*, 662 S.E.2d 12, 19 (N.C.App. 2008). So the issue facing the Court here is: under § 52-59b(a)(2), does an Internet posting that is generally accessible from anywhere in the world provide the basis for personal jurisdiction over a nonresident defendant who created the posting?

Fortunately, as an issue of first impression, the Superior Court confronted this precise question in *Rios v. Fergusan*, No. FA084039853S, 2008 WL 5511215 (Conn. Super. Ct. Dec. 3, 2008).

*Rios* was a cause of action for a restraining order prohibiting the defendant, a resident of North Carolina, from threatening the plaintiff, a resident of Connecticut. *Id.* at *1. The defendant posted a video on YouTube that threatened the plaintiff with physical harm. The court held that it had jurisdiction over the defendant under Conn. Gen. Stat. § 52-59b(a)(2):

> "[T]he evidence establishes in this case that [the defendant's] YouTube video is more than the mere posting of a message upon an open internet forum by a resident of one state that could be seen by someone in a second state. The evidence shows here that he specifically targeted his message at Rios by threatening her life and safety… *By specifically targeting a Connecticut resident with its threats to [her] life and safety and thereby creating in her a fear for her well-being, the YouTube video created by [the defendant] can be deemed a tortious act committed in this state."* (Emphasis added). *Id.* at *4.

The Federal District of Connecticut has followed the *Rios* rationale. In *Doe I and Doe II v. Ciolli,* 611 F. Supp. 2d 216 (D. Conn. 2009), a Texas resident used Internet postings to defame two Connecticut residents, who subsequently alleged his conduct constituted tortious conduct (unreasonable publicity given to another's life, publicity that places another in a false light before

the public, and intentional infliction of emotional distress) within the state. The *Doe I* Court

agreed, holding that the Internet postings specifically targeted and maligned the plaintiffs by

reference to the school they attended in Connecticut and so sufficed for long-arm jurisdiction

under Conn. Gen. Stat. § 52-59b(a)(2) and its requirement that a defendant have "commit[ted] a

tortious act within the state" of Connecticut.

It is crucial to realize that in *Doe I,* the court pointedly noted "The *Rios* court's holding was

dependent upon the fact that the nonresident defendant 'specifically targeted' a Connecticut

resident, *not*, as [the defendant] argues, that the YouTube video contained a threat. [Emphasis

added] *Id.* (analogizing to cases in which foreign corporations are subject to personal jurisdiction

'premised upon their internet postings based on whether the corporation had specifically targeted

Connecticut residents'). *Id.*" *Id* at 220.

The facts of *Doe I* are nearly identical to the instant case. Defendant Parlato specifically targeted

his vicious false light articles and disclosures of private/untruthful information on the Internet at

the resident Plaintiff in Connecticut, where Plaintiff would feel the emotional distress caused by

the offensive conduct.[1] Moreover, Parlato targeted the audience in Connecticut because he knew

---

[1] Parlato describes himself at considerable length as a "renowned journalist" and claims the First Amendment affords him protection from these torts. However, in *Time, Inc. v. Hill*, 385 U.S. 374 (1967), and *Cantrell v. Forest City Publishing Co*., 419 U.S. 245 (1974), the US Supreme Court specifically determined that false light invasion of privacy and publicizing private facts, respectively, are not protected by the First Amendment. The Court also denied First Amendment protection in *Dun & Bradstreet, Inc. v. Greenmoss Builders*, 472 U.S. 749 (1985), when it declared a false statement made negligently is not protected under the First Amendment if it involves a private matter rather than a matter of public concern. The Court also held that malice need not be shown for the tortious claim to succeed.

that's where Plaintiff is known and the tortious articles would do him the most significant harm. Therefore, under *Rios* and *Doe I*, Parlato committed tortious acts *in* Connecticut, and the state may properly assert personal jurisdiction under § 52-59b(a)(2).

In the Memorandum of Law submitted in support of his Motion to Remove, Parlato claims his "Websites do not specifically target individuals in Connecticut or individuals who would be likely to view the website on a computer in Connecticut for commercial purposes. [He] has not directed his activities on the Websites so that they would be particularly reviewed or read by persons in Connecticut. Nor has Mr. Parlato made any statements on the Websites that he believed would affect persons in Connecticut." (Parlato Memorandum at 10-11).

On the contrary, the evidence demonstrates that Parlato has purposefully employed multiple strategies to ensure his posts reached the Plaintiff and the Connecticut audience. Since October 3, 2021, Parlato has waged a campaign to terrorize Plaintiff by publishing on his websites, frankreport.com and artvoice.com, 63 lengthy articles and hundreds of "comments" that disclose private, often untrue information about Plaintiff and present him in a heinously false light, accusing him of pedophilia, child abuse, and other morally repugnant conduct.[2] Of the 63 articles, 48 contain "Connecticut" or "CT" in their headline. Search engines, like Google, have complex algorithms that match the search terms people use with the words in website headlines/ titles. So, in crafting headlines, websites use specific keywords to attract the particular audience

---

[2] In addition to the 63 lengthy articles and hundreds of comments about the Plaintiff, Parlato puts Plaintiff in a false light in other published articles in which he is not the primary focus.

they're seeking. This practice is known as "search engine optimization" ("SEO") (Ramos and

Cota, *Search Engine Marketing*, First edition, 2008). By putting "Connecticut" or "CT" in his

headlines, Parlato is purposefully directing his Internet communications at the individuals in the

state - the Plaintiff, in particular, and Connecticut residents, in general.

But Parlato uses other tactics to ensure that his tortious communications reach Connecticut. He

republished all of his articles about Plaintiff on familycourtcircus.com, a virulently racist/anti-

semitic *website solely dedicated to maligning the* <u>*Connecticut*</u> *family courts*. Parlato does not

republish any other articles on *The Family Court Circus*, only those about Plaintiff and his

divorce. Parlato also created an Instagram account (username: "@frankreportinvestigates")

which exclusively promotes the articles about Plaintiff; no other topics are even mentioned on

his Instagram site. In addition, he has a Twitter account (username: @frank_report) to further

publicize the postings about Plaintiff.

In his Motion to Remove, Parlato states, "Neither Mr. Parlato nor the Websites have specifically

targeted Mr. Ambrose by threatening his life or safety." (Parlato Memorandum at 11). This is

another false claim. In his articles, Parlato frequently falsely accuses Plaintiff of morally

reprehensible crimes, like sexually/physically/emotionally abusing his children. In so doing,

Parlato incites his readers and then publishes their threats (e.g., to come to Plaintiff's house to

give him a "beating" and "rescue" his children) in the "Comments" to his articles. Parlato's

actions are even more dangerous because he has disclosed the Plaintiff's home address and phone

number on his websites. Plaintiff has received 21 obscene and threatening voicemails (most

recently on December 31 at 4:48 PM) that reference content posted on *The Frank Report,* making claims like, "We're coming for you." The police are investigating the calls, which were made with untraceable numbers. Parlato has been warned about the potential violence his articles incite and the detrimental impact the threats have on Plaintiff, especially on his children, who read his website, yet he continues to incite readers and publish threats, undeterred.

As indicated, the *Doe I* court specifically determined that a threat is unnecessary for the state to assert jurisdiction. Nevertheless, Parlato's continued publication of inciting articles and threats which deliberately subject Plaintiff and his children to potential danger betray his clear intent to harm. Parlato has brazenly acknowledged his intent. On frankreport.com on August 9, 2022, after stating that he has already published "negative articles about Ambrose indexed in Google for eternity," Parlato said, "I have more in my arsenal." So Parlato not only makes threats, he evidences his malice.

Despite his insistent claims to the contrary, Parlato goes to great lengths to deliberately direct his tortious communications at the Plaintiff and the broadest possible Connecticut audience. Therefore, Connecticut may assert personal jurisdiction over him under CGS § 52-59b(a)(2).

**B. Connecticut's exercise of jurisdiction will not violate due process.**

Once it is established that § 52-59b(a)(2) permits the exercise of personal jurisdiction over a defendant, it must next be determined "whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." *Cogswell v. American Transit Ins. Co.,*

*supra*, 282 Conn. at 515, 923 A.2d 638. The Supreme Court has established a two-pronged test

for determining whether a court's assertion of personal jurisdiction over a non-resident comports

with due process. *See International Shoe Co. v. Washington*, 362 U.S. 310, 314 (1945)). First, the

defendant must have "certain minimum contacts" with the forum state, and second, "maintenance

of the suit must not offend traditional notions of fair play and substantial justice." *Kernan v.*

*KurzHastings*, 175 F.3d 236, 242 (2d Cir. 1999) (citing *Calder v. Jones*, 465 U.S. 783, 788

(1984)). Each prong will be examined in succession.


**a) The Defendant has minimum contacts with Connecticut.**


"Whether sufficient minimum contacts exist for a court to have jurisdiction is clearly dependent

on the facts of each particular case." *Standard Tallow Corp. v. Jowdy*, 190 Conn. at 48, 52, 459

A.2d 503 (1983). "The essence of the minimum contacts test is 'that there be some act by which

the defendant purposefully avails itself of the privilege of conducting activities within the forum

State, thus invoking the benefits and protections of its laws.'" *Inset Sys., Inc. v. Instruction Set,*

*Inc.*, 937 F. Supp. 161, 164-65 (D. Conn. 1996) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253

(1958)). "All that is required is sufficient contact to make it reasonable and just, according to our

traditional notions of fair play and substantial justice, to permit the state to enforce the

obligations incurred there." *Wedig v. Brinster*, 1 Conn. App. 123, 129 (1983).


In *Doe I*, the court determined that the Texas defendant had sufficient minimum contacts with

Connecticut because he purposefully posted messages about the plaintiffs, whom he knew were

Yale Law School students, on a message board he knew the plaintiffs and their classmates could view. The court reasoned that the plaintiffs' lives were centered in Connecticut, and they felt the brunt of the harm in the state. 611 F. Supp. 2d 216 (D. Conn. 2009). *See Calder v. Jones, supra,* 465 U.S. at 791, 104 S.Ct. 1482 ("[j]urisdiction over petitioners in California is proper because of their intentional conduct in Florida calculated to cause injury to respondent in California… [The defendants'] intentional, and allegedly tortious, actions were expressly aimed at California. [The defendants] wrote and edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the state in which she lives and works. . . . Under the circumstances, petitioners must 'reasonably anticipate being haled into court there' to answer for the truth of the statements made in their article."). Similarly, in *Rios,* the defendant *"*posted the video on an Internet medium that can be disseminated worldwide, but the content of the video establishes that he was purposefully directing it to the applicant in Connecticut."

Here, Parlato knows the Plaintiff's life is based in Connecticut and he would suffer the most reputational, emotional, and financial harm if false light communications and private disclosures were directed at the state. Consequently, as established above, Parlato went to considerable lengths to target his tortious communications at Connecticut. Therefore, he has purposefully availed himself of the privilege of conducting activities within Connecticut and invokes its laws.

**b) It is fair for Connecticut to assert personal jurisdiction over Defendant.**

Once minimum contacts have been established, the second stage of the due process inquiry asks

whether the assertion of personal jurisdiction comports with traditional notions of fair play. 282

Conn. at 525. The factors the court will consider include the relative burdens on plaintiff and

defendant of litigating the suit in this or another forum, the forum state's interest in adjudicating

the dispute, and the interstate judicial system's interest in efficiently resolving

controversies. *Burger King v. Rudzewicz*, 471 U.S. 462, 476-77 (1985). The burden is on the

defendant to prove a compelling case that personal jurisdiction is unreasonable under the

circumstances. *Broad. Mktg. Int'l., Ltd. v. Prosource Sales & Mktg., Inc.*, 345 F. Supp. 2d 1053,

1063 (D. Conn. 2004). Parlato has not met that burden.


In *Doe I*, the court noted that the defendant, a resident of Texas "may be somewhat 'burdened' by

litigating in Connecticut; however... this case presents issues of Connecticut law, Connecticut

has an interest in adjudicating the dispute, and adjudication in Connecticut would dispose of this

matter efficiently. [The defendant] has not satisfied his burden to prove that personal jurisdiction

is unreasonable under the circumstances." 611 F. Supp. 2d 216, at 220.


Parlato asserts that he will be "burdened" by litigating in Connecticut. However, as recently as

August, he traveled from Florida to Buffalo, NY, to plead guilty to the 18-count federal

indictment for fraud and tax evasion that resulted from a 4-year joint investigation by the FBI

and IRS. He will again travel from Florida to Buffalo to be sentenced on March 7 in the Western

District of New York. He cannot now claim to be surprised that his many tortious acts in

Connecticut may require him to travel out of his home state to be held accountable for his unlawful conduct.

Furthermore, as established, Parlato deliberately directed tortious communications into Connecticut to harm a resident for over a year, establishing a persistent course of unlawful conduct with the state. He should have reasonably anticipated that he may be haled into Connecticut to answer for his actions. Moreover, as in *Doe I*, Connecticut has a strong interest in protecting its citizens from harm, and Plaintiff is interested in obtaining convenient and effective relief in Connecticut. Accordingly, Plaintiff's interest in receiving and the state's interest in providing relief and protection from Parlato's tortious harms outweigh any burden he may face in defending this case in Connecticut. Plaintiff respectfully suggests that exercising personal jurisdiction over Parlato is neither unjust nor otherwise violates the constitutional principles of due process.

### 2. Plaintiff effected proper service on Defendant in July 2022

In his Notice of Removal, Parlato repeatedly insists that he was never properly served notice by the Plaintiff (Parlato Notice 2, 3, 9, 11). However, the facts definitively show otherwise.

"Whether service of process was proper requires consideration of the service rules in the state where the action was brought, which here is Connecticut." *Brandon Vernon v. Able Employment Service Center*, D. Conn. 2021 WL 3036919 *See C.W. v. Estate of Rockefeller,* No. 20-cv-2205 (VSB), 2020 WL 5658702, at *3 (S.D.N.Y. Sept. 23, 2020) (collecting cases). Under Connecticut law, a nonresident who is subject to the state's long-arm jurisdiction under § 52-59a is also

14

subject to the state's service of process in any civil action. CGS § 52-59a (c) provides in relevant

part:

> Any nonresident individual…over whom a court may exercise personal
> jurisdiction, as provided in subsection (a) of this section, shall be deemed to have
> appointed the Secretary of the State as its attorney and to have agreed that any
> process in any civil action brought against the nonresident individual may be
> served upon the Secretary of the State *and shall have the same validity as if*
> *served upon the nonresident individual personally*. (Emphasis added).

So a nonresident, such as Parlato, is deemed to have appointed the Secretary of the State as

his attorney, and process service in any civil action brought against him served upon the

Secretary of the State has the same effect as if served upon him.

On July 18, 2022, at Plaintiff's direction, a licensed Connecticut State Marshall sent a true and

attested copy of the Writ, Summons and Complaint via registered mail to Parlato's correct

address in Florida. The Marshall also delivered an attested and true copy to the Connecticut

Secretary of State at the Secretary's office on that date, which was at least twelve days before the

return date of the summons, and left the appropriate fees with the Secretary. The Marshall filed

the Return of Service with the Superior Court in New Haven on July 21, 2022 (#100.30),

attached as EXHIBIT A. So Despite Parlato's many claims to the contrary, he was properly

served under Connecticut law in July.

When Parlato did not respond to the Summons by the August 9 return date, Plaintiff filed a

Motion for Default for Failure to Appear, which was granted on August 24 (#101.10), attached as

EXHIBIT B. Months later, when Parlato still had not filed an answer, Plaintiff filed a Motion for

Default for Failure to Plead, which was granted on December 20 (#102.10), attached as

EXHIBIT C. When Plaintiff filed each of these motions, he sent courtesy copies via USPS to Parlato at the correct address. However, according to Parlato, not one of these communications reached him.

Although not required, Plaintiff took the time and incurred the expense to have the Monroe County (FL) Sheriff serve a copy of the Summons and Complaint to Parlato at the correct address on September 6. And, on two separate occasions, Plaintiff emailed copies of the Summons and Complaint to Parlato at the correct email address. Again, according to Parlato, he never received any of these communications - all of which were sent to the correct physical and email addresses.

It's also worth noting that on July 22, the day after Plaintiff originally filed the Complaint with the Superior Court, familycourtcircus.com, the Connecticut website on which Parlato republishes his articles about the Plaintiff, posted a lengthy article discussing Plaintiff's lawsuit against Defendant. The article included links to the filed Complaint and to Parlato's own website, frankreport.com. Subsequent comments published on Parlato's website frankreport.com reference the lawsuit.

Finally, on November 14, Plaintiff sent a Victim Impact Statement in connection with Parlato's sentencing for fraud/tax evasion to the US District Court in Western New York. A copy of the Plaintiff's original Complaint was attached thereto. On information and belief, the US Probation officers shared the impact statement and attachments with Parlato and his criminal defense counsel.

In short, despite his contentions, it is reasonable to infer that Parlato actually received at least one of these multiple communications more than 30 days before he filed his removal notice. However, whether he did is of no consequence since the State Marshall definitively and properly served the Secretary of State on Parlato's behalf in July 2022.

### 3. Removal is not timely under 28 U.S.C. § 1446 because Defendant filed his motion well after the 30-day statutory deadline

The period within which a state court defendant may remove the action to federal court is severely limited by the provisions of 28 U.S. Code § § 1446(b), which provide in pertinent part:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

Parlato claims, "Removal is timely under 28 USC 1446(b) because this Notice of Removal is filed within 30 days of service of legal process because the defendant has not been served [sic]" (Parlato Notice 3). While not at all clear, Parlato seems to be suggesting that he was not served. As established immediately above, that is not true; he was served in July. Parlato declined to file anything in the case until December, and did not file his Notice to Remove until December 27, well outside of 30 days after receipt of a copy of the initial pleading setting forth the claim for relief upon which the underlying action is based.

Removal statutes must be construed narrowly in favor of remand. As the US Supreme Court explained in *Shamrock Oil & Gas Corp.*:

Not only does the language of the Act of 1887 evidence the Congressional purpose to restrict the jurisdiction of the federal courts on removal, but the policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of such legislation. . . . "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." 313 U.S. 100, 108-09 (1941).

Under the provisions of Connecticut's rules of practice:

The rule specifically and unambiguously provides that any claim of lack of jurisdiction over the *person* as a result of an insufficiency of service of process *is waived* unless it is raised by a motion to dismiss filed within thirty days in the sequence required by Practice Book § 10-6, formerly § 112. Thus, thirty-one days after the filing of an appearance or the failure to adhere to the requisite sequence, a party is deemed to have submitted to the jurisdiction of the court. Any claim of insufficiency of process is waived if not sooner raised. *Pitchell v. Hartford*, 247 Conn. 422, 433, 722 A.2d 797 (1999).

There is no ambiguity here. Parlato was successfully served notice of the underlying action in July, he did not file his Notice to Remove until December, more than five months later.

Therefore, his notice of removal is untimely under 28 U.S.C. § 1446(b). For this reason, and those set forth above, Plaintiff respectfully requests that the Court remand this matter to Connecticut Superior Court in New Haven.

Dated: January 17, 2023

Respectfully submitted,

Christopher Ambrose *Pro Se*
381 Horsepond Rd.
Madison, CT 06443
203.505.1889
ca0515@aol.com

*EXHIBIT    A*

Docket No: NNHCV 2250542435
#100.30

## OFFICER'S RETURN TO COURT

| | | | |
|---|---|---|---|
| State of Connecticut | ) | | |
| | ) | ss. Hartford | July 18, 2022 |
| County of Hartford | ) | | |

Then and by virtue hereof and by direction of the plaintiff, I made due and legal service upon the within named non-resident defendant, FRANK PARLATO, JR., by leaving one verified true and attested copy of the original **Writ, Summons and Complaint** at the office of the Secretary of the State of Connecticut, 165 Capitol Avenue, Suite 1,000, Hartford, CT. Said Secretary of the State of Connecticut is the duly authorized Agent for the within named non-resident defendant. (per CGS 52-59b)

And afterwards, on the 18th day of July, 2022, I made due and legal service upon the within named non-resident defendant, FRANK PARLATO, JR., by depositing in the Post Office at Rocky Hill, postage paid and certified, return receipt requested, one true and attested copy of the within original **Writ, Summons and Complaint** addressed to Frank Parlato, Jr., 29009 Geranium Drive, Big Pine Key, FL 33043.

Supplemental return to follow.

The within is the original **Writ, Summons and Complaint** with my doings thereon endorsed.

Attest:

Frederick E. DiNardi, Jr.
Connecticut State Marshal
Hartford County

FEES:
| | |
|---|---|
| Service | $80.00 |
| Travel | 15.00 |
| Pages | 68.00 |
| Endorsements | 8.00 |
| Postage | 9.00 |
| Sec. of State | 50.00 |
| TOTAL | $230.00 |

Judicial District of New Haven
SUPERIOR COURT
FILED

JUL 21 2022

CHIEF CLERK'S OFFICE

*Exhibit B*

#101.10

ORDER   089998

DOCKET NO: NNHCV225054243S                    SUPERIOR COURT

AMBROSE, CHRISTOPHER, A.                      JUDICIAL DISTRICT OF NEW HAVEN
    V.                                            AT NEW HAVEN
PARLATO, FRANK, JR.
                                              8/24/2022

ORDER

ORDER REGARDING:
08/16/2022 101.00 MOTION FOR DEFAULT -FAILURE TO APPEAR PB 17-20

The foregoing, having been considered by the clerk, is hereby:

ORDER: GRANTED

Motion for default for failure to appear is granted.

089998 _____

BY THE CLERK
Processed by: Zachary Wiacek

This document may be signed or verified electronically and has the same validity and status as a document with a physical
(pen-to-paper) signature. For more information, see Section I.E. of the *State of Connecticut Superior Court E-Services
Procedures and Technical Standards* (https://jud.ct.gov/external/super/E-Services/e-standards.pdf), section 51-193c of the
Connecticut General Statutes and Connecticut Practice Book Section 4-4.

#102.10

EXHIBIT C

DOCKET NO: NNHCV225054243S

AMBROSE, CHRISTOPHER, A.
  V.
PARLATO, FRANK, JR.

ORDER   089998

SUPERIOR COURT

JUDICIAL DISTRICT OF NEW HAVEN
  AT NEW HAVEN

12/20/2022

## ORDER

ORDER REGARDING:
12/12/2022 102.00 MOTION FOR DEFAULT-FAILURE TO PLEAD

The foregoing, having been considered by the clerk, is hereby:

ORDER: GRANTED

Superior Court Results Automated Mailing (SCRAM) Notice was sent on the underlying motion.

089998
_____

BY THE CLERK
Processed by: Zachary Wiacek

This document may be signed or verified electronically and has the same validity and status as a document with a physical (pen-to-paper) signature. For more information, see Section I.E. of the *State of Connecticut Superior Court E-Services Procedures and Technical Standards* (https://jud.ct.gov/external/super/E-Services/e-standards.pdf), section 51-193c of the Connecticut General Statutes and Connecticut Practice Book Section 4-4.

**CERTIFICATE OF SERVICE**

I affirm that I served by First Class U.S. mail a true and correct copy of the foregoing Motion to

Remand to State Court and accompanying Memorandum of Law upon pro se Defendant Frank

Parlato, Jr. at his address listed on the docket, 29009 Geranium Drive, Big Pine Key, FL 33043.


Date: 1.17.23

Christopher Ambrose

Pro Se Plaintiff