Christopher Ambrose
381 Horsepond Rd.
Madison CT 06443
ca0515@aol.com
203.505.1889

November 8, 2023

Hon. Michael P. Shea

Chief US District Judge for the District of Connecticut

450 Main Street - Annex 135

Hartford, Connecticut 06103

Re:     Civil Case #: 3:22-cv-01648-MPS
        *Ambrose v. Parlato*

Dear Chief Judge Shea:

I am the Plaintiff in the captioned case. Pursuant to FRCP 6(b)(1)(A), I respectfully request an

extension of time of approximately 50 days, from November 16 to January 2, 2024, to submit an

answer to the Defendant's Motion to Dismiss. This is my first request for an extension to file this

document. I have attempted to obtain the Defendant's consent; I did not receive a response.

I require extra time for the following reasons:

The Defendant's Motion is double the length permitted by the federal rules and raises many

issues. While some issues have little to do with the case, I am a *pro se* litigant and must research

how to respond. To cite only two such examples, the Motion introduces alleged "evidence,"

including events that had not occurred and witnesses who were not part of the case when the

Complaint was filed, and the Motion also asserts that service was improper.

The primary reason I require an extension is the intense trauma his minor children and I are suffering due to the Defendant's misconduct and that of his live-in girlfriend, Karen Riordan ("Riordan"), who is also my former wife and the children's mother.

Brief context is necessary to provide the Court a better understanding of how the Defendant's malicious course of conduct directly impacts my ability to respond promptly.

In April 2020, I was awarded sole legal and physical custody of the three children after Riordan was found, among other things, to have coached them to falsely accuse me of sexual abuse. In September 2021, unbeknownst to me, Riordan moved to Florida to live with the Defendant. [1] Within a few weeks, on October 3, 2021, the Defendant began publishing the defamatory articles against me that are the basis for the Complaint. [2]

After not seeing the children for three years, Riordan unlawfully took them beginning in April 2023. She immediately had them make false sexual abuse allegations against me. The Department of Children and Families ("DCF") determined the allegations were baseless, but Riordan refused to return the children. Because the police consider custody matters "civil," they

---

[1] The Defendant has denied the two are in a relationship. However, on November 9, 2021, Riordan filed the attached report of felony domestic violence against the Defendant with the Monroe County (FL) Sheriff, in which she describes him as her "intimate" partner. They continued to live and travel together. The Plaintiff did not learn of their relationship until months after the Complaint was filed.

[2] The Defendant claims to be a legitimate journalist deserving of heightened First Amendment protections. However, he never informed his readers, this Court, or the Plaintiff that his intimate partner is the scorned ex-wife of the Plaintiff, about whom he has written over 200 defamatory articles.

refused to get involved. I had to rely on the Family Court to enforce the lawful custody orders, which took considerable time.

On August 8, after a two-day hearing, the Connecticut Superior Court found that the children were under Riordan's "coercive control," a form of psychological abuse considered to be domestic violence (*See,* Conn. Gen. Stat. §§ 46b-1, 46b-15). The Court issued Protective Orders for the children against Riordan, ordering her to return them.

Riordan did not attend the hearing that day, but she learned of the orders and immediately sent the children out of state to prevent me from regaining custody. She did not inform me, and I had to get help from the police to locate them. Once I did, I learned the RI police also regard custody as civil and would not assist beyond ensuring the children's welfare.

For the next couple months, each time I located and arranged to pick up the children, the Defendant and/or people she controls or pays conspired to move them to a new secret location; the children were sent from CT to RI and then to two locations in NY.

During this entire time, Defendant constantly communicated with the children and wrote dozens of articles that included his conversations with them in nearly real-time. In his articles, he directed the children not to return to their father, me; he stated they should be with their mother, Riordan, the Defendant's lover. In short, the Defendant directly interfered with my custody of his children while exploiting them and violating their privacy in a craven bid to gain clicks for his website.

The children's months-long odyssey being covertly moved from one of Riordan's associates to the next just came to an end two weeks ago on October 23. That's when the Rockland County Family Court issued the attached *habeas writ* directing the sheriff to remove the children from Riordan's cousin's home.

When the deputies arrived at the cousin's house, the Defendant was on the phone with the children, and had them taking photos of the police and me outside. He published the photos in lengthy articles containing quotes from the children denigrating me, using the Defendant's words.

The Defendant has defamed me in over 200 articles, over 50 since August 1, 2023, virtually all of which falsely accuse me of heinous crimes, including sexually abusing my children and threatening to rape my daughter. The Defendant has repeatedly identified the children - with their photos - as victims of sexual abuse in his online articles - t*he press affords adult victims of sexual assault more privacy than the Defendant offered three innocent minors*. The Defendant has also relentlessly identified me as a sexual predator, despite child protective services in CT and NY exonerating me of all such allegations.

As the Defendant acknowledges in his Motion, his exploitation of the children and false accusations against me have appeared on other platforms, including Robbie Harvey's TikTok site, which has over 3 million followers. What the Defendant's Motion pointedly ignores is that *Harvey removed all videos about and references to the children and me because he realized*

*the allegations were false after he saw the evidence I provided. That is the same evidence I*

*shared with the Defendant over a year ago.*

The Defendant's publicizing of his articles got them seen by the children's peers, exposing my children to intense public scrutiny and searing ridicule. The Defendant's salacious published falsehoods greatly exacerbated the psychological harm Riordan's months-long odyssey caused both the children and me.

The emotional fall-out from the Defendant and Riordan's egregious misconduct has been significant. In the last two weeks, I have had little time to do anything but try to manage it. This has involved arranging and attending therapy sessions with each child and working with the schools and engaging tutors to re-acclimate the children who have missed two months of class. At the direction of the children's therapists, I also spend considerable time with the children to repair the damage the Defendant's lies have done to my paternal relationship.

Moreover, I must deal with the significant legal consequences of Riordan's incessant contempt of the custody and restraining orders, which was exacerbated and assisted by the Defendant. To protect the children and me going forward, I'm seeking sanctions in court. A hearing is tentatively scheduled for two days, but given the potential witnesses and scope of wrong-doing, it will likely take longer.

Having spent over six figures on attorney fees in CT and NY to get the children back, I am *pro se* on these matters, which require considerable time to research, prepare, and prosecute. In addition, the my mom is in hospice, and deserves time and attention.

Finally, I must correct the Defendant's material misrepresentations so that the Court will have an accurate picture of the circumstances.

First, the Defendant insinuates that I am a seasoned attorney. I graduated from law school over 30 years ago, briefly practiced corporate finance - never litigation - and then shifted careers, which is why I allowed his license to lapse (it is not "suspended").

On the other hand, the "*pro se*" the Defendant works two attorneys, Richard Luthmann and Joe O'Hara. Both had years of legal experience before they were disbarred and incarcerated in different criminal acts - Luthmann for extortion and fraud and O'Hara for conspiracy to commit fraud. Both now work with the Defendant on his website. The Defendant and O'Hara were both involved with the Nxivm sex cult, for which the Defendant was the publicist and worked closely with the leader, who is serving 120 years for sex trafficking.

I am overwhelmed with trying to provide a living for my family, see my mother through her last moments and comfort my children who have experienced serious psychological trama, caused in no small part by the Defendant. In addition, I must manage the legal issues connected to Riordan's criminal contempt. As much as I am grateful for the opportunity to hold the Defendant accountable for the utter ruin his defamation has caused me emotionally and financially, I have

no time to devote to properly do so at this time. On the contrary, the Defendant is in home confinement under supervision by US Probation after taking a plea on a 19-count indictment for fraud, money laundering, and tax evasion. He has nothing but time on his hands.

For these reasons, I respectfully request an extension until January 2, 2024 to submit my response to his Motion.

Respectfully submitted,

Christopher Ambrose

Cc: Frank Parlato, Jr.
29009 Geranium Dr.
Big Pine Key, FL 33043