**UNITED STATES DISTRICT COURT**
**District of Connecticut**
**New Haven Division**

---------------------------------------------------
CHRISTOPHER A. AMBROSE,

Plaintiff,

V. Case No. 22 cv 1648 (VAB) (RAR)

FRANK PARLATO, JR.,

Defendant.
---------------------------------------------------

NOV 21 2023 PM2:41
FILED-USDC-CT-NEW HAVEN

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**(As Required by Local Rule 12(a))**

The defendant *Pro se* Frank Parlato, Jr. ("Defendant" or "Mr. Parlato") submits this memorandum in support of his motion to dismiss the complaint of plaintiff *Pro se* Christopher A. Ambrose ("Plaintiff" or "Mr. Ambrose") under Rule 12 of the Federal Rules of Civil Procedure ("FRCP").

**Background**

If this Honorable Court looks beyond the language used in the unartfully drafted, poorly pleaded, rambling, incoherent, stream-of-consciousness complaint and determines what the Plaintiff seeks, it becomes clear that this action arises out of alleged defamation claims.

The Defendant is a *Pro se* litigant, unskilled in the science of law. The Plaintiff is also a *Pro se* litigant, but he is trained in the practice of law. He is a New York University School of Law graduate and a member of the New York Bar. For a time, he engaged in the practice of law.

Boiled down, this is a defamation case brought by Plaintiff, a lawyer, against a journalist that should never have been brought in Connecticut. The journalist has no minimum contacts with the State of Connecticut. Due process does not support the journalist being haled into the Connecticut courts

**ORAL ARGUMENT REQUESTED**

based on articles and reporting diligently and truthfully relaying newsworthy information on an Open Internet website, where the Defendant does not inject himself or purposefully avail himself of the Connecticut jurisdiction personally through the mails and wires, or in any other way.

Plaintiff does not dispute these facts. Plaintiff does not discuss that the objectionable statements made by Defendant were made on the Internet to the entire world via a media outlet and were not tailored, injected, or targeted to invade Plaintiff's privacy or cause severe emotional distress beyond that which is cognizable in a defamation claim. The lawyer should know better. His pleadings fail as a matter of law. Respectfully, the Court should strike these duplicate defamation counts defectively recast as other torts.

The Court should dismiss this case because the Court does not have personal jurisdiction over the Defendant.

In the alternative, Defendant gives the Court five (5) other bases upon which to dismiss this case AND a basis to transfer the case to the United States District Court for the Southern District of Florida, Key West Division, if the Court does not dismiss the case.

This case does not belong in Connecticut.

**Pro Se Litigant**

In the interests of justice, the Defendant asks the Court to construe these pleadings of a *Pro se* litigant in a lenient, liberal, and non-technical manner, raising the strongest arguments they suggest. *See generally Haines v. Kerner,* 404 U.S. 519, 520-21, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972); *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir. 1995).

The Plaintiff claims he is also a Pro Se litigant, even though he is an attorney. Nonetheless, Defendant has complied with Local Rule 12(a) and served Plaintiff with the required notice as part of these motion papers under FRCP Rule 12.

**THE FACTS**
**The Parties and the Complaint**

Plaintiff Christopher A. Ambrose ("Plaintiff" or "Mr. Ambrose") is an attorney admitted to practice law in the State of New York. His license is suspended because he has not complied with the Rules of the New York Court of Appeals concerning registration and CLE requirements.

On July 21, 2022, Mr. Ambrose filed a lengthy, rambling, verbose, meandering document styled as a "Complaint" in the Superior Court of the State of Connecticut, Judicial District of New Haven at New Haven. The named Defendant in the lawsuit is Frank Parlato, Jr. ("Defendant" or "Mr. Parlato").

Attorney Ambrose alleges severe and substantial harms against the Defendant, investigative journalist Frank Parlato, Jr., including but not limited to 1) Invasion of Privacy by False Light at Common Law and the Second Restatement of Torts, 2) Defamation at Common Law and Connecticut General Statutes § 53-237, and 3) Intentional Infliction of Emotional Distress at Common Law.

Mr. Parlato was never served with the Complaint. He came across it in December 2022, by happenstance, while searching the Connecticut Superior Court dockets related to his practice of journalism. Mr. Parlato promptly filed a Notice of Removal with this Court, reserving all rights.

Mr. Ambrose filed a motion to remand back to Connecticut Superior Court. Last month, this Court denied the motion to remand and, by Order, invited the instant application under FRCP Rule 12.

**Defendant Frank Parlato, Jr., is a Renowned Investigative Journalist**

Mr. Parlato is an investigative journalist. His work has been cited in hundreds of news outlets, like The New York Times, The Daily Mail, VICE News, CBS News, Fox News, New York

Post, New York Daily News, Oxygen, Rolling Stone, People Magazine, The Sun, The Times of London, CBS Inside Edition, among many others in all five continents.

Mr. Parlato's investigative work was instrumental in exposing and taking down the sex cult known as NXIVM, its principals being convicted in a prosecution brought by the U.S. Attorney for the Eastern District of New York. See U.S. v. Raniere et al., No. 20-3520-cr (L); 20-3789-cr (Con) (E.D.N.Y.) )(Garaufis, J.). Mr. Parlato has been prominently featured on HBO's docuseries "The Vow" and was the lead investigator and coordinating producer for Investigation Discovery's "The Lost Women of NXIVM." In addition, he was credited in the Starz docuseries 'Seduced' for saving 'slave' women from being branded and escaping the sex-slave cult known as DOS.

Mr. Parlato appeared on the Nancy Grace Show, Beyond the Headlines with Gretchen Carlson, Dr. Oz, American Greed, Dateline NBC, and NBC Nightly News with Lester Holt, where Mr. Parlato conducted the first-ever interview with Keith Raniere after his arrest. This was ironic, as many credit Mr. Parlato as one of the primary architects of Raniere's arrest by the FBI and the cratering of the sex cult he founded. Mr. Parlato is a consulting producer and appears in TNT's The Heiress and the Sex Cult, which premiered on May 22, 2022. Mr. Parlato also has an IMDb page and a Wikipedia page. See Frank Parlato, Jr., https://en.wikipedia.org/wiki/Frank_Parlato,_Jr.

Mr. Parlato is the owner, publisher, and editor-in-chief of several media properties and websites, none of which have contacts with Connecticut. Mr. Parlato was formerly the editor-in-chief and publisher of Art Voice, the Niagara Falls Reporter, The Front Page and the South Buffalo News, weekly print publications in the Western New York area. Relevant to this matter are The Frank Report (www.frankreport.com), and Art Voice (www.artvoice.com), website-only media publications.

**Mr. Ambrose's Claims**

Mr. Ambrose is upset that he was the subject of Mr. Parlato's journalistic coverage. Mr. Parlato talked about him on newsworthy matters. Mr. Ambrose claims Mr. Parlato defamed him, and his words were so defamatory and false that the statements breached Mr. Ambrose's privacy, destroyed Mr. Ambrose's reputation, and caused Mr. Ambrose extreme emotional distress. The way Mr. Ambrose states it:

> Beginning on October 3, 2021, and continuing through the present, Parlato has maliciously published on the Internet no fewer than 48 different "articles" that contain demonstrated falsehoods about every aspect of Plaintiff's character, history and beliefs and accuse him of crimes of moral turpitude. The cascade of lies Parlato published includes, but is not limited to,stating that Plaintiff: is a pedophile; sexually molests his children; emotionally and physically abuses his children; admits to watching child pornography; produces pornography; had multiple, multi-year extramarital affairs, including a gay lover; has stolen over $1 million from his spouse; is a "deadbeat" who did not financially support his estranged wife once he filed for divorce; has bribed and/or colluded with the guardian ad litem, custody evaluator, judges and his spouse's own attorneys to wrongfully gain custody of their children and keep her from seeing them; is an active participant in a vast, RICO conspiracy involving the Connecticut family court judiciary and bar as well as law enforcement, child protective services, elected and appointed public officials; is psychologically unstable; has a drinking problem and anger issues; and is an inveterate liar who makes frequent threats.

Surprisingly, since Mr. Ambrose is a lawyer,[1] Mr. Ambrose does not recognize several important legal distinctions like statements of fact versus statements of opinion or statements of fact based upon source materials or published court documents. Every statement objectionable to Mr. Ambrose is either a non-actionable opinion or an accurate statement of fact. Mr. Parlato is not liable for any of the activity alleged by Mr. Ambrose.

---

[1] The record shows that Mr. Ambrose previously actively practiced law and that his license in New York is suspended because he has failed to meet the registration or CLE requirements.

Mr. Parlato's words and actions were part of his legitimate investigative, newsgathering, reporting, and publishing activity. Mr. Parlato's activities were the creation and utterance of words. A reading of the Complaint shows that Mr. Parlato's actions and Mr. Ambrose's consequent alleged injuries arise from words. The core of Mr. Ambrose's claims is defamation claims. One claim is an actual "common law defamation" claim. The other two are re-cast defamation claims, one alleging an amorphous "privacy violation" caused by Mr. Parlato and the other alleging "emotional distress" caused by Mr. Parlato's words, which is just a subspecies of alleged damages under the defamation claim.

The Complaint fails to allege facts that state a potential cause of action for anything other than defamation, as noted below. The Complaint fails to allege a single jurisdictional fact about how Mr. Parlato transmitted his allegedly harmful statements into the Connecticut jurisdiction using the mail or the wires of the United States. The Complaint talks all about Mr. Parlato's websites, which do not transact any business with Connecticut consumers, or any consumers for that matter. Mr. Parlato's websites are media outlets that qualify for First Amendment and Anti-SLAPP protection.

Mr. Parlato must be served by hand on a Connecticut defamation claim. Mr. Parlato has not been served in this case.

As a member of the press, Mr. Parlato's newsgathering and reporting activities afford him First Amendment and Anti-SLAPP protections and related immunity from suit. The Complaint does not allege that Mr. Parlato's activities are anything other than newsgathering or reporting.

But the Court will likely not get that far because Mr. Ambrose must establish a *prima facie* case that jurisdiction over Mr. Parlato complies with Connecticut law and due process, and this he cannot do.

## Jurisdictional Facts

Mr. Parlato is a journalist. Mr. Parlato has media outlets where he publishes his reporting. Relevant to this matter, those sites are The Frank Report, and Art Voice (together the "Websites"), website-only media outlets.

Neither Mr. Parlato nor the Websites transact business in Connecticut. The Websites do not allow users to buy or sell anything. The only commodity that Mr. Parlato offers is Free Speech: investigative journalism, newsgathering, and reporting. Users may comment on the releases or posts on the Websites. Again, the Websites are Free Speech platforms.

Neither Mr. Parlato nor the Websites have contracts to be performed in Connecticut. Neither Mr. Parlato nor the Websites solicit business in Connecticut or provide advertising specifically to Connecticut. If Mr. Parlato is liable for anything, it is for disseminating investigative journalism, newsgathering, and reporting into the free market of ideas – Constitutionally protected activity.

Mr. Parlato committed no tortious conduct in Connecticut. The Websites do not promote commercial activity beyond protected free speech. The Websites do not specifically target individuals in Connecticut or individuals who would be likely to view the website on a computer screen in Connecticut for commercial purposes. Mr. Parlato has not directed his activities on the Websites so that they would be particularly reviewed or read by persons in Connecticut. Nor has Mr. Parlato made any statements on the Websites that he believed would affect persons in Connecticut beyond the reporting of the news.

Mr. Parlato has not transmitted his allegedly harmful statements into the Connecticut jurisdiction using the mail or the wires of the United States or otherwise. Mr. Parlato and the Website disseminate information to a general audience: readers globally. The objectionable information

attributable to Mr. Parlato and the Websites is all posted on an Open Internet forum that anyone could view.

There is no allegation or proof that any posts allegedly written by Mr. Parlato were directly and expressly targeted at Connecticut, let alone at Mr. Ambrose or his "zone of privacy." Any emails to Mr. Ambrose were directly and explicitly sent for legitimate journalistic purposes (i.e., requesting comments). Mr. Ambrose does not allege that these news-gathering emails were tortious in nature. Mr. Ambrose's allegations in favor of personal jurisdiction are premised solely on Mr. Parlato and the Websites' Internet postings.

Mr. Parlato and the Websites have transmitted information about Mr. Ambrose on an Open Internet forum as part of its reporting activities. Neither Mr. Parlato nor the Websites have specifically targeted Mr. Ambrose by threatening his life or safety.

Accordingly, Mr. Parlato cannot be subject to suit based on "tortious conduct in this state.." or any other provision of the long-arm statute.

The only potential surviving claim is defamation. Assuming for the sake of argument that the defamation claim survives jurisdictional and due process analysis, Connecticut law requires a defamation action to be served by hand.

Mr. Parlato was never served with legal process in this case.

**LEGAL ARGUMENT**
**THE COURT SHOULD GRANT MR. PARLATO'S MOTION TO STRIKE COUNTS 1 AND 3 PURSUANT TO FRCP RULE 12( f)**

Preliminarily, Mr. Parlato asks for the Court to make a legal interpretation of the pleadings. "[T]he interpretation of pleadings is always a question of law for the court." *Berndtson v. United States*, 2017 WL 830390, *3 (D. Conn. Mar. 1 ,2017)(Thompson, J,)(quoting *Boone v. Wm. W. Backus Hosp.*,272 Conn. 551, 559 (2005). "[I]n evaluating the pleading, the court is not bound by the label affixed to that pleading by the party."' Id. (quoting Freeman v. United States, 166 F. Supp. 3d2I5,220 (D. Conn.2015)). Indeed, a court "must look beyond the language used in the complaint to determine what the plaintiff really seeks." *Gazo v. City of Stamford*, 255 Conn. 245,263 (2001).

What Mr. Ambrose seeks is defamation, stated in three ways. As stated below, he may not disguise defamation as other torts to avail himself of the Connecticut Long-Arm statute and side-step due process.

As pleaded, the four corners of the initial pleading, the Complaint, reveal, in substance, a singular claim that rings in defamation that is the only "plausible cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The only "plausible" and legally sufficient stated claim of the three claims asserted in Mr. Ambrose's Complaint is the "common law defamation" claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

FRCP Rule 12(f) provides that a court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 94 (2d Cir. 2019); *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). Accordingly, a motion to strike a claim "will not be granted unless it appears to a certainty that [defendant] would succeed despite any state of the facts which could be

proved in support of the [Plaintiff's claims]." *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984) (internal quotation marks omitted).

Courts in this Circuit typically apply a three-part test to motions to strike: (1) there must be no question of fact that might allow the claim to succeed; (2) there must be no substantial question of law that might allow the claim to succeed; and (3) the defendant must be prejudiced by the inclusion of the claim. *See, e.g., Specialty Mins., Inc. v. Pluess-Stauger AG*, 395 F. Supp. 2d 109, 111 (S.D.N.Y. 2005) (same).

When considering the first and second prongs, courts apply a similar legal standard as that applicable to a motion to dismiss under Rule 12(b)(6): they must determine the "sufficiency of a [claim or ] defense . . . solely upon the face of the pleading" and "accep[t] as true all well-pleaded factual allegations and dra[w] all reasonable inferences in the [non-moving party's] favor." *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010).

Mere assertions of prejudice by the moving party are insufficient to satisfy this prong. *County Vanlines Inc. v. Experian Information Solutions, Inc.*, 205 F.R.D. 148, 153 (S.D.N.Y. 2002).

**A. Plaintiff's Pleaded Counts 1 and 3 Fail Elemental Analysis as a Matter of Fact and Law**

Plaintiffs Count 1 and 3 fail under legal analysis because they are improperly pleaded as a matter of law and are merely restated defamation claims.

1. <u>Defamation</u>

"To prevail on a common-law defamation claim, a plaintiff must prove that the defendant published false statements about [him] that caused pecuniary harm. *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 27, 662 A.2d 89 (1995). To be actionable, the statement in question must convey an objective fact, as generally, a defendant cannot be held liable

for expressing a mere opinion. See *Mr. Chow of New York v. Ste. Jour Azur S.A.*, 759 F.2d 219, 230 (2d Cir. 1985) (no liability where restaurant review conveyed author's opinion rather than literal fact); *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 [2d Cir.] ('[a] writer cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it may be') [cert. denied sub nom. *Hotchner v. Doubleday & Co.*, 434 U.S. 834, 98 S. Ct. 120, 54 L. Ed. 2d 95 (1977)]." *Daley v. Aetna Life & Casualty Co.*, 249 Conn. 766, 795-96, 734 A.2d 112 (1999). In a civil action for defamation, where the protected interest is the plaintiff's personal reputation, the rule in Connecticut is that the truth of the allegedly defamatory statement of fact provides an absolute defense. *Goodrich v. Waterbury Republican-American, Inc.*, [188 Conn. 107, 114-15, 119-20, 448 A.2d 1317 (1982)].

Concerning common-law privilege defenses, a defendant may shield himself from liability for defamation by asserting the defense that a qualified privilege protects the communication. When considering whether a qualified privilege protects a defendant in a defamation case, the court must resolve two inquiries. The first is whether the privilege applies, which is a question of law.

The second is whether the applicable privilege has been defeated through its abuse, which is a question of fact." (Internal quotation marks omitted.) Id., 432 n.32.

"Qualified privileges may be defeated by a showing, by a preponderance of the evidence; see *Miles v. Perry*, [11 Conn. App. 584, 590, 529 A.2d 199 (1987)]; of actual malice, also known as constitutional malice, or malice in fact. See, e.g., *Gambardella v. Apple Health Care, Inc.*, [291 Conn. 620, 634, 969 A.2d 736 (2009)] (common law intra-corporate communications privilege); *Goodrich v. Waterbury Republican-American, Inc.*, [188 Conn. 107, 114-15, 119-20, 448 A.2d 1317 (1982)] (fair comment privilege); see also *Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 99 (2d Cir. 2000) ('[t]he critical difference between common-law malice and

constitutional malice, then, is that the former focuses on the defendant's attitude toward the plaintiff, the latter on the defendant's attitude toward the truth')." *Gleason v. Smolinski*, supra, 319 Conn. 433 n.32.

"[M]alice is not restricted to hatred, spite or ill will against a plaintiff, but includes any improper or unjustifiable motive. [A] qualified privilege is lost upon showing either actual malice, i.e., publication of a false statement with actual knowledge of its falsity or reckless disregard for its truth, or malice in fact, i.e., publication of a false statement with bad faith or improper motive. Indeed…a showing of either actual malice or malice suffices to defeat a qualified privilege in defamation cases." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Gambardella v. Apple Health Care, Inc.*, supra, 291 Conn. 630-31. "[A]ctual malice requires a showing that a statement was made with knowledge that it was false or with reckless disregard for its truth. A negligent misstatement of fact will not suffice; the evidence must demonstrate a purposeful avoidance of the truth. Further, proof that a defamatory falsehood has been uttered with bad or corrupt motive or with an intent to inflict harm will not be sufficient to support a finding of actual malice . . . although such evidence may assist in drawing an inference of knowledge or reckless disregard of falsity." (Citations omitted; internal quotation marks omitted.) Id., 637-38.

So, as the elements apply to this case to prevail on a common law defamation claim, Mr. Ambrose must show: 1) Mr. Parlato published false statements about Mr. Ambrose, 2) the false statements caused pecuniary harm, and 3) since Mr. Parlato is a member of the press, that Mr. Parlato's statements were made with actual malice or reckless disregard for the truth, or with bad faith or improper motive.

Mr. Parlato submits that Counts 1 and 3, though styled as "Invasion of Privacy by False Light at Common Law and the Second Restatement of Torts" and "Intentional Infliction of Emotional Distress," respectively, are actually recast Common Law Defamation claims. The elemental analysis becomes the same.

2. Invasion of Privacy by False Light at Common Law and the Second Restatement of Torts

Connecticut follows the Second Restatement of Torts definition of false light invasion of privacy, which requires a showing that: "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Goodrich v. Waterbury Republican-Am., Inc.*, 188 Conn. 107, 131, 448 A.2d 1317 (1982) (citing to 3 Restatement (Second), Torts § 652E). *See also Borg v. Cloutier*, 200 Conn. App. 82, 109, 239 A.3d 1249 (2020) (same).

The essence of a false light privacy claim is that the matter published concerning the plaintiff (1) is not true, and the Defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter. and (2) is such a 'major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position.'" *Id.* *Kennedy v. Caruso*, No. 3:19-cv-260(VLB), 2021 U.S. Dist. LEXIS 224172, at *59-60 (D. Conn. Nov. 19, 2021).

Here, Mr. Ambrose fails to plead that Mr. Parlato's publication of facts satisfies the actual knowledge or reckless disregard of the element of the tort. The allegations that Mr. Parlato published stories based upon already-public documents are not actionable. The allegations that Mr. Parlato published stories based on interviews and opinions are not actionable.

**ORAL ARGUMENT REQUESTED**

There are no allegations that Mr. Parlato published stories based upon patently false statements or that any reasonable person would find false. Mr. Ambrose fails to identify anything that Mr. Parlato published that was even remotely actionable. Mr. Ambrose makes these specified allegations against Mr. Parlato in his complaint:

**A. Parlato maliciously and falsely published that Plaintiff is a pedophile who sexually abused his children. (Page 8)**

Mr. Ambrose admits the Multi-Disciplinary Task Force at Yale New Haven Hospital made a report that made disturbing disclosures of a sexual nature. Mr. Ambrose does not deny the report. Yale isn't being sued. Mr. Parlato's reporting was initially based on the Yale Report and is not actionable.

Since then, overwhelming evidence from filed court documents and credible third parties has emerged regarding Mr. Ambrose's pattern of abuse. Note, this is all newsworthy reporting.

The story is now interstate, national news since Christopher Ambrose apparently hoodwinked the Mount Pleasant Police Department into threatening the teenagers that they would be arrested, committed to, and beaten and raped in a New York State Facility ("You will be beaten, raped, and abused on a daily basis."). Ambrose also used questionable authority to coax the authorities in Congers, NY, to allow the Ambrose teenagers to be taken back across state lines into Connecticut. A national audience follows the story, in addition to the international readership of the Frank Report. Mr. Ambrose has crossed state lines and lied to law enforcement, attempting to retrieve the children who first fled from Connecticut to their grandfather's house in Rhode Island for safety. From Rhode Island, they were safe with relatives in Congers, New York (Rockland County). But just weeks ago, Christopher Ambrose wrested control of the children, like chattel, and against their will. Like

runaway slaves in antebellum times, these CHILDREN flee jurisdiction to jurisdiction in search of safety and hope. Now, according to the children, Christopher Ambrose's activity has stifled them.

In the recent recording of an interaction with the Mount Pleasant Police Department listed above, Mr. Ambrose's daughter M.A.'s voice was firm: "I won't return to [Christopher Ambrose]. I'd rather be anywhere but there." Her trauma is well-documented. According to renown psychiatrist Dr. Bandy X. Lee, MD, M.Div., a clinical psychiatrist with over twenty-five years of experience, who interviewed Mr. Ambrose's daughter, M.A, who disclosed her father abused and molested her, threatened vaginal penetration for so-called "behavioral infractions." Dr. Lee, as a mandated reporter filed a report with appropriate authorities.

M.A's statements are corroborated by law enforcement, legal, and medical professionals. Mr. Parlato previously published a Connecticut Court Risk Assessment from December 2020, wherein Court Attorney Allison Kass, Esq., determined Christopher Ambrose was **HIGH RISK** for potential danger to his children.

RDER HEARING
ES REPORT

STATE OF CONNECTICUT
SUPERIOR COURT
www.jud.ct.gov

Court Use Only
ROHFSR

Karen Riordan

Name of Respondent: Christopher Ambrose

Docket number: NNH FA205049348S

(number, street, town, zip code): 235 Church Street, New Haven, CT 06510

Temporary Restraining Order hearing date: 12/15/2020

ily Services Risk Assessment administered with the following outcome:

VSI-R (Scale 0 - 28) Actual Score 16 Low Risk: 0 - 4 Moderate Risk: 5 - 10 High Risk: 11 - 28

SRI (Scale 0 - 5) Actual Score 1 High Risk: 2 or more

Assessment: ☐ Low Risk ☐ Moderate Risk ☒ High Risk

*Note: All levels of risk are for the statistical probability for recidivism or potential danger for the applicant. A score of low risk does not mean that future violence will not occur, and a score of high risk does not necessarily mean that future violence will occur. All cases of intimate partner violence have a potential for increased frequency and/or escalation.* ***This report may be considered by the court, in its discretion, consistent with General Statutes Section 46b-15(b), but does not negate the requirement for proof of the statutory criteria necessary for granting an application for a restraining order.***

Report prepared by (Name and title): Allison Kaas, Esq., Family Relations Counselor II

Date: 12/15/2020

Mr. Parlato obtained and published a June 6, 2023, e-mail from M.A's court-appointed attorney, Michael G. Curley, Esq., asking Connecticut DCF officials to release reports that" included allegations against M.A's father, including a new accusation of penetration."

**ORAL ARGUMENT REQUESTED**

**From:** Michael G. Curley <mcurley@murthalaw.com>
**Sent:** Tuesday, June 6, 2023 2:43 PM
**To:** STEWART, NANCY <NANCY.STEWART@ct.gov>
**Cc:** BURKE, KELLY <KELLY.BURKE@ct.gov>; PETERSON, MICHELLE
<MICHELLE.PETERSON@ct.gov>
**Subject:** Re: [EXTERNAL] RE: Appointment to interview M   Ambrose

You don't often get email from mcurley@murthalaw.com. Learn why this is important

EXTERNAL EMAIL: This email originated from outside of the organization. Do not click any links or open
any attachments unless you trust the sender and know the content is safe.

Good afternoon, Nancy:

I have not gotten confirmation from my client (or her mother) that they are willing to
meet at this time.

When we spoke previously, you indicated that the most recent report included
allegations against M█'s father, including a new allegation of penetration. This is the
first time I have learned that there are allegations in the most recent report regarding the
safety of the children in their mother's home. Is that correct? Or did I misunderstand
your email below?

Could you please provide a copy of the most recent report? Or a summary of the
allegations?

Thank you,

MICHAEL G. CURLEY | ASSOCIATE

Direct: 860-240-6049 | Fax: 860-240-5869 | mcurley@murthalaw.com

MURTHACULLINA

Murtha Cullina LLP | Attorneys at Law | www.murthalaw.com

280 Trumbull Street | Hartford | CT | 06103-5303

Mr. Parlato further published an August 8, 2023, letter to Connecticut Superior Court Judge
Thomas J. O'Neill from Dr. Bandy Lee, Not only did Dr. Lee come to the medical conclusion that
Christopher Ambrose is a psychopath by conducting the Hare Psychopathy Checklist Revised [PCL-
R] Test, but she also reported serious allegations of child molestation to the Connecticut Courts.

**ORAL ARGUMENT REQUESTED**



Bandy Lee, MD, MDiv

Forensic Psychiatrist and Violence Expert

NPI 1922140326

August 8, 2023

Dear Judge O'Neil:

As one mandated reporter to another (judges are mandated reporters as well), I must warn against your sending Ms. Karen Riordan's children to Mr. Christopher Ambrose. He is no ordinary violent man.

I am sending this exceptional letter to Your Honor because I cannot in good conscience (and by my professional ethics) stand by. I have heard recordings of Mr. Ambrose's threatening the daughter with vaginal penetration as punishment for minor misbehavior. All three children have reliably reported sexual abuse, and no one has believed them, frankly, because the father is so threatening, he has intimidated all witnesses (he has already been threatening to me, which I had to report to local police). The 12 (now 13)-year-old recently reported anal penetration. Even if none of this occurred, their lives seem to have been living "hell" from his coercive control, verbal, emotional, and psychological abuse, and isolation from the mother who raised them (the father did not raise them) for three years, which is abundantly and clearly recorded. His aggression is such that, immediately after the first child ran away, he found out their address from the Connecticut Address Confidentiality Program, hunted her down and stalked her everywhere in his car, almost causing her to have an accident. As expected from his coercion, these children exhibit signs of severe trauma in their behavior: finding refuge in substances, self-harm, and suicidal thoughts while living with him, as well as going from normal weight to morbid obesity, as you have heard.

In the original family court proceeding, Mr. Ambrose's hearsay was given far more weight than any actual evidence. A court-appointed "expert", whose qualifications are questionable to me, made extremely faulty conclusions that contradicted at least three psychiatrists and one peer psychologist; in other words, no other professional agreed with her. Child protective services investigations were noted, but as a violence expert of twenty-five years' experience, I can tell you that I have found them to be too frequently wrong. Individuals of the most dangerous personality disorders go undetected (there are difficult to detect; in criminal courts, they are 2.5 times more likely to receive reduced sentences than those of the same crime who are not so dangerous). I told this to one of the supervisors at the Department of Children and Families, as Mr. Ambrose was just such an individual, but they have not followed up, which shows that they are not only ineffective, they are also insincere: these are children who have reported being severely punished if they ever gave a true report of Mr. Ambrose's abuse against them, and DCF should know that this is common threatening behavior among the most dangerous individuals.

Finally, this Court seems to have an erroneous concept of me. When I appeared yesterday as a potential witness, I was not a trying to provide a "witness testimony by ambush," but had dropped everything at my own work to travel almost two hours to appear, because I was told on Friday that, unlike most courts in my experience, this Court was not accepting a phone or Zoom testimony. I could more than have served as a fact or a rebuttal witness, but by the time you gave Ms. Riordan a chance, she was so intimidated and tearful from the rebuke she received of attempting to have me as an expert witness—"in violation of court order," as Mr. Ambrose's attorney repeatedly emphasized, when she simply did not understand the procedure—that she did not think to call on me, even when she had the opportunity and I was there.

917.328.2492 | bandyleemd@gmail.com

Dr. Lee also filed a Report of Suspected Child Abuse or Neglect for each of the Ambrose children.

**ORAL ARGUMENT REQUESTED**

**REPORT OF SUSPECTED CHILD ABUSE OR NEGLECT**

DCF-136
05/2015 (Rev.)

Careline
1-800-842-2288

**Within forty-eight hours of making an oral report, a mandated reporter shall submit this form (DCF-136) to the relevant Area Office listed below**
See the reverse side of this form for a summary of Connecticut law concerning the protection of children.

*Please Print or Type*

Child's Name: M.A. M.A. S.A.
☒ M ■ F
Age Or DOB: 1/27/07
Race: ☐ American Indian or Alaskan Native ☐ Asian/Pacific Islander ☐ Black/African American (not of Hispanic Origin) ■ Hispanic ■ White (not of Hispanic origin) ☐ Unknown ☐ Other

Child's Address: Unknown

| Name Of Parents Or Other Person Responsible For Child's Care | Address | Phone Number |
|---|---|---|
| Christopher Ambrose | 381 Horsepond Rd, Madison, CT 06443 | |

| Name Of Careline Worker To Whom Oral Report Was Made | Date Of Oral Report | Date And Time Of Suspected Abuse/Neglect |
|---|---|---|
| Arnie Wright | 8/9/23 | 8/7/23 |

| Name Of Suspected Perpetrator, If Known | Address And Phone Number, If Known | Relationship To Child |
|---|---|---|
| Christopher Ambrose | 381 Horsepond Rd, Madison, CT 06443 | Adoptive Father |

Nature And Extent Of Injury(ies), Maltreatment Or Neglect
[illegible]

Describe The Circumstances Under Which The Injury(ies), Maltreatment Or Neglect Came To Be Known
[illegible]

Describe the Reasons Such Persons(s) Are Suspected of Causing Such Injuries, Maltreatment of Neglect
[illegible]

Information Concerning Any Previous Injury(ies), Maltreatment Or Neglect Of The Child Or His/Her Siblings
All indications are that M.A. M.A. and S.A. were happy and thriving u

Information Concerning Any Prior Cases(s) In Which The Person(s) Have Been Suspected Of Causing An Injury(ies), Maltreatment Or Neglect Of A Child
Mr. Ambrose appears to have had a pattern of abuse, neglect, and coercive control of the children all their lives, whic

List Names And Ages Of Siblings, If Known
All listed above.

What Action, If Any, Has Been Taken To Treat, Provide Shelter Or Otherwise Assist The Child?
The mother was directed to make a police report regarding Mr. Ambrose be

***REPORTER SECTION***

Reporter's Name: Bandy Lee, M.D.
Agency Name: Rockland Psychiatric Center
Phone Number: 328-2492
Agency Address: 140 Old Orangeburg Road
City: Orangeburg, NY 10962

**Reporter's Race**
☐ American Indian or Alaskan Native
■ Asian/Pacific Islander
☐ Black/African American (not of Hispanic Origin)
☐ Hispanic (any race)
☐ White (not of Hispanic origin)
☐ Prefer Not to Answer
☐ Other

| Reporter's Signature | Position | Date |
|---|---|---|
| | Psychiatrist | 8/9/23 |

Dr. Lee's statements are unequivocal:

> "I have heard recordings of Mr. Ambrose's **threatening the daughter with vaginal penetration as punishment for minor misbehavior.** All three children have reliably reported sexual abuse, and no one has believed them, frankly, because the father is so threatening, he has intimidated all witnesses (he has already been threatening to me, which I had to report to local police). The 12 (now 13)-year-old recently reported anal penetration."

**ORAL ARGUMENT REQUESTED**

Mr. Parlato previously published statements from licensed NYC Private Investigator Manuel Gomez.

**BLACK OPS PRIVATE INVESTIGATORS INC.**

May 29, 2023

To: Prosecutor Charles Kruly and FBI Agent Brian Burns
CC: Judge

**Subjects: video evidence of child molestation by Christopher Ambrose**

It has come to my attention that Mr. Christopher Ambrose has been attempting to deceive the prosecutor's office and the FBI by sending false information to your offices.

I am Private Investigator Manuel Gomez. I have been investigating the allegations of child molestation by Christopher Ambrose against his three adopted children. This case has been going on for almost three years, and Mr. Ambrose and his lawyers have successfully prevented any evidence showing his molestation of the children to have been entered into court evidence or even presented to the court. Note the mother is a poor schoolteacher and has not been able to afford adequate representation. Ms. Riordan has a case before the appellate court to try to overturn a ruling by another judge that determined that the children should remain with the father.

I will be attaching the video evidence proving that Mr. Ambrose molests his children. I have a 35 minute video of my initial meeting with the children. The children describe in detail the molestation they endure. Due to the file size, I cannot attach it via e-mail. If you would like a copy of the video, please contact me. I will mail a flash drive with the video. The first video attached to this e-mails shows that Mr. Ambrose removed the doorknobs from his children's room to provide easier access to his children. The children stated that he would come into their rooms at night, and that they could not lock the door. Second, attached are the hospital documents supporting that the children told the ER doctors and hospital psychiatrists of the sexual abuse that they suffer at the hands of their adoptive father. The hospital determined that Mr. Ambrose was a threat to the children and recommended that the children go home with the mother.

Private Investigator Gomez minces no words: "Mr. Ambrose molests his children," and he told this to the FBI and US Attorney for the Western District of New York in a letter dated May 29, 2023.

All three Ambrose children, M.A. M.A. and S.A., have filed Juvenile Court complaints in Connecticut alleging abuse, including sexual molestation, by their adoptive father, Christopher Ambrose.

**ORAL ARGUMENT REQUESTED**



[illegible] aff[illegible]davit

Aug [illegible] 2023

ORIGINAL

[illegible] COURT FILE

[illegible] name is [redacted] Ambrose [illegible] I am writing this because I am [illegible] I am going to be forced to return to chris Ambrose's house. I have been forced to live with him for three years and was abused the whole time.

1. I [illegible] from him on July [illegible] 2023 [illegible] to [illegible] safe and happy.

2. I am safe and happy but chris keeps lying and threatening that I have to go back.

3. My birthmom, Tara Southern thought the hearing was Aug [illegible] so the case got dismissed and now I am really scared.

4. I have nightmares that the abuse [illegible] please don't let that happen Judge [illegible]

5. Chris has molested me by touching my private and won't stop even when I told him to stop.

6. When I report his abuse he has physically shoved and pushed me, yelled at me and takes all my belongings.

7. He calls us [illegible] names and allows lots of drugs and alcohol to be used in his house by allowing his [illegible] [illegible]

[illegible] guys [illegible] my [illegible] sleep [illegible] in my [illegible] doing drugs and alcohol.

[illegible] lets us drive his car without permit [illegible] license.

10. He lies to DCF and the police and threatens us not to say anything.

11. I didn't get to see my cousins, papa, aunts or anyone I love for over 3 years.

12. He abuses M[redacted] and M[redacted] in the same way.

Judge Conway please help me I have always told the truth and we can prove what M[redacted] [redacted] and I are saying.

Please help

Please assign attorney M[redacted] [illegible] to me.

[redacted] Ambrose

This petition is only against chris Ambrose who I was forced to live with for over three years.

My mom and my birth mom have never hurt me they both love and support me

**ORAL ARGUMENT REQUESTED**



IN RE: M.A. : SUPERIOR COURT JUVENILE MATTERS

: AT NEW HAVEN

DOCKET NO.: CP23-025798 A : August 12, 2023

AMENDED COMPLAINT AND SUPPORTING STATEMENT OF FACTS

COUNT ONE (UNCARED FOR SPECIALIZED NEEDS)

1. On numerous occasions both prior and subsequent to April 26, 2022, the Respondent, Chris Ambrose, improperly touched the inner thigh and or breasts of the minor, M.A.
2. On numerous occasions both prior and subsequent to April 26, 2022, the Respondent, Chris Ambrose, improperly touched the inner thigh and or breasts of the minor M.A.
3. The minor, M.A., is similarly situated as the minor children, S.A. and M.A.;
4. On numerous occasions both prior and subsequent to April 26, 2022, the Respondent, Chris Ambrose, utilized the derogatory and insensitive term of "Beaner" when speaking to, or about M.A.M.A. and/or S.A.
5. On numerous occasions both prior and subsequent to April 26, 2022, the Respondent, Chris Ambrose, threatened to withhold and or use personal, local, state and/or Federal resources to intimidate and control the minor children M.A. M.A. and/or S.A.
6. On numerous occasions both prior and subsequent to April 26, 2022, the Respondent, Chris Ambrose, utilized support services such as 211 and 911 to intimidate and cause fear in the minor, M.A.
7. On numerous occasions both prior and subsequent to April 26, 2022, the Respondent, Chris Ambrose, broke through the locked door of the minor M.A. causing said minor to fear for his safety;
8. On numerous occasions both prior and subsequent to April 26, 2022, the Respondent, Chris Ambrose, falsely accused the minor M.A. of theft;
9. On numerous occasions both prior and subsequent to April 26, 2022, the Respondent, Chris Ambrose, has lied about the cause of the depression of the minor child, M.A. which has exacerbated said minor's condition and/or prevented said minor from obtaining the proper medical care and attention;
10. The respondent, Chris Ambrose, has prevented the minor, M.A., from having contact with his extended family despite said minor requesting said contact causing the minor emotional distress and depression;

The statements of professionals overwhelmingly corroborate the serious allegations of Christopher Ambrose's child molestation. They have filed court documents and the statements and credible reports of the Ambrose teenagers.

Mr. Ambrose cannot plausibly allege Mr. Parlato's reporting is malicious or in bad faith.

**B. Parlato maliciously and falsely published that Plaintiff admitted to viewing child pornography and that he is attracted to children. (page 9)**

Mr. Ambrose admits that there was a custody evaluation. The reporting by Mr. Parlato is based on the custody evaluation by the Connecticut Family Court. Mr. Ambrose does not deny the report. Neither the Connecticut Family Court nor the Evaluator is being sued. Mr. Parlato's reporting is based upon the Family Court Evaluator's report and is not actionable.

**C .Parlato maliciously and falsely published that Plaintiff admitted to viewing gay pornography and to producing child and gay pornography. (page 11)**

Mr. Ambrose admits that there was a forensic evaluation of his computer. Mr. Ambrose does not deny the findings. Mr. Ambrose only denies the expert methodology, which is in and of itself newsworthy. The reporting by Mr. Parlato is based on the forensic evaluation. Mr. Ambrose does not deny the actual report. The Forensic Evaluator is not being sued. Mr. Parlato's reporting is based on Forensic Evaluator's report and is not actionable.

**D. Parlato maliciously and falsely published that Plaintiff stole over $1 million from Riordan, as well as an alleged six-figure inheritance. (page 11)**

Mr. Ambrose is a party to the lawsuit *Ambrose v. Ambrose*, FBT-FA-19-6088163-S (Sup. Ct. Conn). Mr. Ambrose knows the allegations of both parties. Mr. Ambrose knows that all of the allegations reported by Mr. Parlato were allegations contained in the filed court documents. Mr. Ambrose does not deny it. The reporting by Mr. Parlato is based on the filed court documents and direct quotes from court transcripts where Mr. Ambrose admits confiscating the marital funds as well as his wife's inheritance. Ms. Riordan is not being sued. The Connecticut Superior Court is not being sued. Mr. Parlato's reporting is based upon claims made in filed court documents and is not actionable.

**E. Parlato maliciously and falsely published that Plaintiff is a "deadbeat" who did not financially support his wife once he filed for divorce in July 2019. (page 13)**

Again, Mr. Ambrose is a party to the lawsuit *Ambrose v. Ambrose*, FBT-FA-19-6088163-S (Sup. Ct. Conn). Mr. Ambrose knows the allegations of both parties. Mr. Ambrose knows that all of the allegations reported by Mr. Parlato were allegations contained in the filed court documents. Mr. Ambrose does not deny it. The reporting by Mr. Parlato is based on the filed court documents and the allegations contained therein. Ms. Riordan is not being sued. The Connecticut Superior Court is not

being sued. Mr. Parlato's reporting is based upon claims made in filed court documents and is not actionable.

**F. Parlato falsely and maliciously published that Plaintiff "hates" his children and was an absentee parent who abused his children by, among other things, keeping them "caged," keeping them medicated, preventing them from communicating with anyone, isolating them from Riordan's extended family and friends. (page 14)**

Again, Mr. Ambrose is a party to the lawsuit *Ambrose v. Ambrose*, FBT-FA-19-6088163-S (Sup. Ct. Conn). Mr. Ambrose knows the allegations of both parties. Mr. Ambrose knows that all of the allegations reported by Mr. Parlato were allegations contained in the filed court documents. Mr. Ambrose does not deny it. The reporting by Mr. Parlato is based on the filed court documents and the allegations contained therein. Ms. Riordan is not being sued. The Connecticut Superior Court is not being sued. Mr. Parlato's reporting is based upon claims made in filed court documents and is not actionable.

Moreover, if this case is not dismissed, Mr. Ambrose has (wittingly or unwittingly) made his children witnesses in this case. Truth is a complete defense. If the children were truly traumatized before, why would Mr. Ambrose do this to them?

Because of the trauma already reported and the children appear to be in a safe place, and away from Mr. Ambrose, Mr. Parlato reserves his right to move the Court to take the immediate depositions of the Ambrose teenagers to preserve the same based on significant safety and medical reasons.

**G. Parlato falsely and maliciously published that Plaintiff was awarded custody because he lied in an affidavit and prevented Riordan from seeing the children. (page 18 )**

Again, Mr. Ambrose is a party to the lawsuit *Ambrose v. Ambrose*, FBT-FA-19-6088163-S (Sup. Ct. Conn). Mr. Ambrose knows the allegations of both parties. Mr. Ambrose knows that all of the allegations reported by Mr. Parlato were allegations contained in the filed court documents. Mr. Ambrose does not deny it. The reporting by Mr. Parlato is based on the filed court documents and the allegations contained therein. Ms. Riordan is not being sued. The Connecticut Superior Court is not being sued. Mr. Parlato's reporting is based upon claims made in filed court documents and by Ms. Riordan and is not actionable.

**H. Parlato falsely and maliciously published that Plaintiff always wanted sole custody and all the marital assets for himself, so he lied and colluded with and/or bribed the court-appointed Guardian ad Litem, custody evaluator, and others. (page 19)**

Again, Mr. Ambrose is a party to the lawsuit *Ambrose v. Ambrose*, FBT-FA-19-6088163-S (Sup. Ct. Conn). Mr. Ambrose knows the allegations of both parties. Mr. Ambrose knows that all of the allegations reported by Mr. Parlato were allegations contained in the filed court documents. Mr. Ambrose does not deny it. The reporting by Mr. Parlato is based on the filed court documents and the allegations contained therein. Ms. Riordan is not being sued. The Connecticut Superior Court is not being sued. Mr. Parlato's reporting is based upon claims made in filed court documents and by Ms. Riordan and is not actionable.

**I. Parlato falsely and maliciously published that Plaintiff illicitly colluded with the GAL, custody evaluator, attorneys, judges, police officers, detectives, DC F investigators and caseworkers, hospital doctors, nurses, and social workers, elected and appointed public officials, and others in a vast "RICO" conspiracy to deprive Riordan of custody and her due process rights.**

Again, Mr. Ambrose is a party to the lawsuit *Ambrose v. Ambrose*, FBT-FA-19-6088163-S (Sup. Ct. Conn). Mr. Ambrose knows the allegations of both parties. Mr. Ambrose knows that all of the allegations reported by Mr. Parlato were allegations contained in the filed court documents. Mr. Ambrose does not deny it. The reporting by Mr. Parlato is based on the filed court documents and the allegations contained therein. Ms. Riordan is not being sued. The Connecticut Superior Court is not being sued. Mr. Parlato's reporting is based upon claims made in filed court documents and by Ms. Riordan and is not actionable.

**J. Parlato falsely and maliciously published that Plaintiff misrepresented his sexuality and was unfaithful during marriage by leading a "double life" that included an illicit "gay lover" and "multiple, multi-year affairs." (page 24)**

Again, Mr. Ambrose is a party to the lawsuit *Ambrose v. Ambrose*, FBT-FA-19-6088163-S (Sup. Ct. Conn). Mr. Ambrose knows the allegations of both parties. Mr. Ambrose knows that all of the allegations reported by Mr. Parlato were allegations contained in the filed court documents. Mr. Ambrose does not deny it. The reporting by Mr. Parlato is based on the filed court documents and the allegations contained therein. Ms. Riordan is not being sued. The Connecticut Superior Court is not being sued. Mr. Parlato's reporting is based upon claims made in filed court documents and by Ms. Riordan and is not actionable.

**K. Parlato maliciously and falsely publishes that Plaintiff is psychologically unwell, has a drinking problem anger issues, and is paranoid and delusional. (page 25)**

Mr. Ambrose admits Mr. Parlato conducted an interview with Michelle Pawlina, who works in the psychiatric field. Ms. Pawlina offered her opinion based on her experience and knowledge of the facts. Mr. Parlato merely reported it. Mr. Ambrose does not deny the report. Mr. Ambrose sued Ms. Pawlina and the case was dismissed. Mr. Parlato's reporting is based on the opinions expressed in an interview and is not actionable. Additionally, the published medical opinion of Dr. Bandy Lee further supports the claim that Mr. Ambrose is psychologically unwell.

In addition, his children report that he drank to excess and crashed his automobile with them as passengers in it when he was driving drunk. He then required the children to drive for him despite their not having driver's licenses, they said.

Accordingly, none of the factual claims enumerated by Mr. Ambrose allege actionable activity. Nothing Mr. Parlato allegedly did was malicious as a matter of fact or law. Mr. Ambrose's alleged "Invasion of Privacy by False Light at Common Law and the Second Restatement of Torts" is just another statement of a defamation claim.

Thus, the "Invasion of Privacy by False Light at Common Law and the Second Restatement of Torts claim" as pleaded and should be stricken on that basis alone. Additionally, the Defendant is prejudiced as described below, particularly because of the Connecticut Long Arm statute's disparate treatment of defamation and non-defamation torts.

3. Intentional Infliction of Emotional Distress

To prevail on a claim for intentional infliction of emotional distress, a plaintiff must plead and prove that (1) the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct (2) the conduct was extreme and

outrageous; (3) the defendant's conduct was the cause of the plaintiff's distress, and (4) the emotional distress sustained by the plaintiff was severe. *Diamond v. Yale University*, 66 Conn.App. 764, 765-66, 786 A.2d 518 (2001).

Mr. Ambrose's allegations are limited to Mr. Parlato's words. Consequences of the "conduct" of the written and spoken word are redressed by the cause of action for defamation.

Mr. Ambrose does not allege facts that Mr. Parlato specifically targeted Mr. Ambrose with any threats that would cause emotional distress. It is not alleged that Mr. Parlato made threatening phone calls or sent threatening emails. It is only alleged that Mr. Parlato wrote several stories about Mr. Ambrose. The activity rings of libel or defamation in the written word.

Mr. Parlato never intended, nor should he have known, that emotional distress would result from his written words on an Open Internet site. Moreover, the freedom of the press trumps Mr. Ambrose's right not to feel "emotional distress" when there is no objective manifestation of objective facts that support the same and no outrageous conduct by Mr. Parlato. Investigating and reporting news is not extreme and outrageous conduct.

Mr. Ambrose's alleged emotional distress is another species of alleged damages and harms cognizable under the defamation claim.

Thus, the Intentional Infliction of Emotional Distress Claim is duplicative of a Common Law Defamation claim as pleaded and should be stricken on that basis alone. Additionally, Defendant is prejudiced as described below, particularly because of the Connecticut Long Arm statute's disparate treatment of defamation and non-defamation torts.

**B . Mr. Parlato is Prejudiced**

Mr. Parlato is prejudiced for two major reasons. First, Mr. Ambrose should not be permitted to disguise a defamation claim as another claim to circumvent jurisdiction that the Connecticut law does not allow. General Statutes §52-59b(a) provides in relevant part:

> "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association, or over the executor or administrator of such nonresident individual, foreign partnership or foreign voluntary association, who in person or through an agent . . . (2) commits a tortious act within the state, *except as to a cause of action for defamation of character arising from the act* . . ." (Emphasis added.)

Defamation is explicitly and specifically excluded from Connecticut's long-arm statute. Though Mr. Ambrose claims that he was harmed in other ways than defamation, the Complaint has not alleged the facts to support it.

Second, and relatedly, Mr. Ambrose knows that Mr. Parlato is a journalist and media member. Mr. Parlato and all journalists and media members similarly situated would be prejudiced if the Connecticut courts allow an end-run around the Legislature's clear pronouncement that defamation is explicitly not subject to long-arm jurisdiction. The chilling effects on free speech and the press would not be prejudicial to just Mr. Parlato and other journalists but to the Marketplace of Ideas as a whole and would be Constitutionally impermissible.

Accordingly, the Court should strike Counts 1 and 3 in Mr. Ambrose's complaint.

**THE COURT SHOULD DISMISS THIS CASE UNDER FRCP RULE 12(b)(2) BECAUSE THERE IS NO JURISDICTION OVER MR. PARLATO IN CONNECTICUT**

Mr. Ambrose, as the proponent of jurisdiction, has the burden of establishing that this Court has personal jurisdiction over Mr. Parlato. *Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir. 1990). No discovery has been conducted to date on this issue. In consequence, at this initial stage, Mr. Ambrose need only allege facts constituting a *prima facie* showing of personal jurisdiction. *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997).

At this stage, the Court construes pleadings and affidavits in Mr. Ambrose's favor. *Id.* Even with a charitable reading of the Complaint, the Court should not find jurisdiction over Mr. Parlato.

In Connecticut, "a trial court may exercise jurisdiction over a foreign defendant only if the defendant's intrastate activities meet the requirements both of [the state's long-arm] statute and the due process clause of the federal constitution." Thomason v. Chem. Bank, 234 Conn. 281, 285-86, 661 A.2d 595 (1995). "[The] first inquiry must be whether our long-arm statute authorizes the exercise of jurisdiction under the particular facts of this case. Only if we find the statute to be applicable do we reach the question of whether it would offend due process to assert jurisdiction." Lombard Bros., Inc. v. Gen. Asset Mgmt. Co., 190 Conn. 245, 250, 460 A.2d 481 (1983); Cousteau Soc'y, Inc. v. Cousteau, 498 F. Supp. 3d 287, 301 (D. Conn. 2020).

**Long Arm Statute Analysis**

The Connecticut Long Arm Statute, General Statutes §52-59b(a) provides in relevant part:

> "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association, or over the executor or administrator of such nonresident individual, foreign partnership or foreign voluntary association, who in person or through an agent . . . (2) commits a tortious act within the state, *except as to a cause of action for defamation of character arising from the act* . . ." (Emphasis added.)

**ORAL ARGUMENT REQUESTED**

Defamation is explicitly and specifically excluded from Connecticut's long-arm statute. Though Mr. Ambrose claims that he was harmed in other ways than defamation, the Complaint has not alleged the facts to support it. And the Connecticut law is clear:

A chief executive officer was not subject to personal jurisdiction under Conn. Gen. Stat. § 52-59b based on defamation claims. The courts did not favor subjecting a nonresident to long-arm jurisdiction by allowing the statute's broad and undefined concept of "transacting business" to trump its explicit and unambiguous exclusions of long-arm jurisdiction for defamation. Lego A/S v. Best-Lock Constr. Toys, Inc., 886 F. Supp. 2d 65, 2012 U.S. Dist. LEXIS 120665 (D. Conn. 2012).

Courts do not favor subjecting an individual nonresident utterer of defamation, however hurtful or unfair, to long-arm jurisdiction by allowing the long-arm statute's broad and undefined concept of "transacting business" to trump its explicit and unambiguous exclusions of long-arm jurisdiction for "a cause of action for defamation of character." The United States District Court for the District of Connecticut agrees with that weight of authority. Lego A/S v. Best-Lock Constr. Toys, Inc., 886 F. Supp. 2d 65, 2012 U.S. Dist. LEXIS 120665 (D. Conn. 2012).

The district court properly dismissed out-of-state defendants from the plaintiff's defamation action because it lacked personal jurisdiction over them under Connecticut's long-arm statute, which did not violate the plaintiff's First Amendment right to petition or Fourteenth Amendment right to equal protection. Friedman v. Bloomberg L.P., 884 F.3d 83, 2017 U.S. App. LEXIS 27729 (2d Cir. Conn. 2017).

Mr. Parlato believes that the entire Complaint sounds in defamation and should be dismissed because Mr. Ambrose has only plausibly pleaded facts to support a defamation cause of action.

Assuming *arguendo* that there are claims in addition to defamation, the Court should similarly find that there is no jurisdiction over Mr. Parlato. The objectionable conduct occurred on Mr. Parlato's Websites, and the Websites did not cause any cognizable legal harm in Connecticut.

Courts in this district have drawn a distinction between active and passive websites for purposes of the exercise of personal jurisdiction. See Kun Shan Ge Rui Te Tool Co. v. Mayhew Steel Prods., Inc., 821 F. Supp. 2d 498, 503 (D. Conn. 2010); see also Best Van Lines, Inc. v. Walker, 490 F.3d 239, 251-52 (2d Cir. 2007) (explaining that a website's interactivity assists inquiry into whether a defendant has transacted business, under the New York long-arm statute, or purposefully availed himself of the privilege of doing business in a state, under the due process analysis).

Active websites are those "where individuals can directly interact with a company over their Internet site, download, transmit[,] or exchange information, and enter into contracts with the company via computer." On-Line Techs. v. Perkin Elmer Corp., 141 F. Supp. 2d 246, 265 (D. Conn. 2001). Active websites may support an exercise of personal jurisdiction.

On the other end of the continuum, "[p]assive websites that require a potential customer to initiate contact with the foreign corporation by telephone, mail, or email, rather than allowing them to order directly over the Internet, cannot support personal jurisdiction." Mayhew Steel Prods., 821 F. Supp. 2d at 503; see also On-Line Techs., 141 F. Supp. 2d at 265 (discussing passive websites).

"The middle ground between the two extremes involves sites where parties can interact with the defendant company, but may not be able to contract with the company or make purchases over the Internet site; in such situations, most courts follow . . . Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997)[,] and determine whether jurisdiction is proper by 'examining the level of interactivity and commercial nature of the exchange of information that

occurs on the Web site.'" On-Line Techs, 141 F. Supp. 2d at 265 (quoting Zippo Mfg., 952 F. Supp. at 1124).

Mr. Parlato's Websites, unlike the websites described in Mashantucket Pequot Tribe v. Raymond Redican, 309 F. Supp. 2d 309, 02cv1828 (JCH)(finding personal jurisdiction in Connecticut based on the operation of a website that targeted Foxwoods' customers) or NFL v. Miller, 2000 U.S. Dist. LEXIS 3929, 2000 WL 335566 (S.D.N.Y. 2000)(finding personal jurisdiction in New York based on the website targeting NFL fans). Mr. Parlato's website is closer to the website in Estate of Nunez-Polanco v. Boch Toyota, Inc., 339 F. Supp. 2d 381, 384 (D. Conn. 2004), where the court dismissed the complaint.

But specifically, Mr. Parlato's Websites are not engaged in commercial activity. The Websites disseminate the news. The Websites did not specifically target individuals in Connecticut or individuals who would be likely to view the website on a computer screen in Connecticut any more than any person in the United States or around the world. Accordingly, Mr. Parlato cannot be subject to suit based on "tortious conduct in this state" or any other provision of the long-arm statute.

The Court should dismiss the Complaint against Mr. Parlato at this juncture.

**Due Process Inquiry**

The second part of the jurisdictional analysis requires the court to determine whether the exercise of jurisdiction over Mr. Parlato is consistent with due process. See Sha-Na-Na, 637 F.Supp. at 595. "A two-step analysis is used when determining whether the exercise of personal jurisdiction would offend Due Process: (1) does the defendant have minimum contacts with the forum; and, if so, (2) does the assertion of jurisdiction comport with traditional notions of fair play and substantial justice." In Re Perrier Bottled Water Litig., 754 F. Supp. 264, 267-68 (D. Conn. 1990)

(citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)).

**Minimum Contacts**

"'[T]he constitutional touchstone of the determination whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposefully established 'minimum contacts in the forum State.'" Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 108-09, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). Thus, evaluating Mr. Parlato's minimum contacts with Connecticut requires a determination of whether there has been some act by Mr. Parlato to purposefully avail himself of the privilege of doing business in the forum state such that it has invoked the benefits and protections of its laws. Asahi, 480 U.S. at 108-09 (citing Burger King, 471 U.S. at 475). "Jurisdiction is proper, where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." Burger King, 471 U.S. at 475 (citing McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957)).

Courts look to Zippo to determine whether a defendant has purposefully availed itself of the privilege of conducting business in the forum state via an Internet website. See Zippo Mfg. Co. V. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997). It should be recognized, however, that Zippo did not create a separate test for analyzing jurisdiction based on a defendant's Internet presence. Rather, Zippo stated that its "sliding scale is consistent with well-developed personal jurisdiction principles." Id. at 1124. Thus, applying the Zippo sliding scale of interactivity is merely the use of a new tool to measure a defendant's commercial activity within the forum state via its website, which is then to be applied to traditional jurisdiction principles.

As discussed above, Mr. Parlato has Websites where Connecticut residents can read news and investigative journalism. This is a Free Speech activity. There is nowhere where a user can purchase products or services. Neither Mr. Parlato nor the Websites conduct business with Connecticut residents over the Internet. Any connection is relevant to the exchange of ideas in the Open Public Square of Free Speech. Thus, there is no substantial connection with Connecticut. Mr. Ambrose has not shown any purposeful availment of the privilege of conducting business in Connecticut that was of a continuing and systematic nature sufficient to support general personal jurisdiction. Cf., generally, ICG America, Inc. v. Wine of the Month Club, Inc., No. 3:09-cv-133 (PCD), 2009 U.S. Dist. LEXIS 77151, 2009 WL 2843261, at *7 (D. Conn. 2009) ("Defendant purposefully availed itself to the privilege of doing business in Connecticut. Its interactive, commercial website invites consumers 'from any state,' including Connecticut, to purchase its products. By operating a commercial website to promote and sell its goods, Defendant has extended itself beyond its home state of California to avail itself of the benefits of doing business in Connecticut.") (citation omitted); Indiaweekly.com, Civil Action No. 3:07-cv-194 (VLB), 2008 U.S. Dist. LEXIS 18056, 2008 WL 687268, at *4 (D. Conn. 2008) ("Courts in this district have held that exercising personal jurisdiction over defendants based on the presence of an active website does not offend due process."); National Football League v. Miller, No. 99 CIV. 11846 JSM, 2000 U.S. Dist. LEXIS 3929, 2000 WL 335566, at *1 (S.D.N.Y. 2000) ("[O]ne who uses a web site to make sales to customers in a distant state can thereby become subject to the jurisdiction of that state's courts.").

The Edberg case stands for the proposition that mere presence on the Internet is never enough to justify a court's exercise of general jurisdiction. See Edberg v. Neogen Corp., 17 F. Supp. 2d 104, 115 (D. Conn. 1998) ("If jurisdiction were [to] be based upon a defendant's mere presence

on the Internet, this would lead to a defendant's being subjected to jurisdiction on a worldwide basis and would eviscerate the personal jurisdiction requirements as they currently exist.").

Mr. Parlato merely has an Internet presence. Any interactivity on the Websites, whereby it invited Connecticut Internet users to participate, was in further of Free Speech and not commercial ends.

**Fair Play and Substantial Justice**

The second part of the due process inquiry requires assessing whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996). This inquiry is framed by the following five factors: "1) the burden that the exercise of jurisdiction will impose on the defendant; 2) the interests of the forum state in adjudicating the case; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and 5) the shared interest of the states in furthering substantive social policies." Id. (citing Asahi Metal Indus. Co., Ltd. v. Superior Court, 480 U.S. 102, 113-14, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)).

All factors favor the conclusion that the court's exercise of jurisdiction over Mr. Parlato is inconsistent with fair play and substantial justice.

Mr. Parlato is not a media giant. He is a small media outlet. The burden on Mr. Parlato by requiring him to defend the suit in Connecticut is substantial.

The forum state has no interest in seeing the system manipulated by an attorney for personal gain to curtail the rights of the free press and circumvent the letter and spirit of the Connecticut Statutes.

Requiring the Plaintiff, an attorney, to prosecute this case in another forum where jurisdiction properly lies would neither be inconvenient nor unduly burdensome for him.

Moreover, the judicial system's interest would be vindicated by disallowing jurisdiction in this forum, as no other defendants in this case will be defending against the plaintiffs' claims in Connecticut. Duplicative litigation in another forum would be a waste of judicial resources, and that concern is not present here.

The Court should find that asserting jurisdiction over Mr. Parlato does not comport with due process and is contrary to notions of fair play and substantial justice.

For the foregoing reasons, the plaintiffs have failed to make a prima facie case regarding the proper exercise of personal jurisdiction by this Court over defendant Mr. Parlato. Further, Mr. Parlato has shown that his journalism and media activities via the Websites are insufficient to satisfy the requirements of Connecticut's long-arm statute. Exercising personal jurisdiction over Mr. Parlato because of such activities would violate the principles of due process.

**THE COURT SHOULD DISMISS THIS CASE UDNDER FRCP RULE 12( b)(4) AND (5) BECAUSE MR. PARLATO WAS NOT PERSONALLY SERVED**

Mr. Parlato makes this claim to preserve his right to dismiss the matter for improper service.

"Proof of service must be made to the court." Fed. R. Civ. P. 4(*l*)(1). Plaintiffs v. United States Postal Serv. Defendants, No. 3:19-CV-1295 (VLB), 2020 U.S. Dist. LEXIS 268063, at *3 (D. Conn. May 29, 2020).

Plaintiffs have submitted neither a return of valid service nor any other evidence of service.

Accordingly, the Court should dismiss this case.

**THE COURT SHOULD DISMISS THIS CASE UDNDER FRCP RULE 12( b)(6) BECAUSE MR. AMBROSE FAILS TO PLEAD A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Mr. Ambrose fails to state causes of action upon which relief may be granted, as stated supra. In the section on the motion to strike, counts 1 and 3 are duplicative of a defamation claim.

Additionally, actual malice is a fact that must be pleaded in a defamation claim against a media defendant. Mr. Ambrose has not pleaded facts to support a claim of actual malice.

Accordingly, the Court should dismiss this case.

**THE COURT SHOULD DISMISS THIS CASE UNDER *FORUM NON CONVENIENS***

Courts determine whether to dismiss an action based on *forum non conveniens* applying a three-step inquiry. Norex Petroleum, Ltd. v. Access Indus., 416 F.3d 146 (2d Cir. 2005); Overseas Media, Inc. v. Skvortsov, 277 F. App'x 92, 96 (2d Cir. 2008). First, the court must determine "the degree of deference properly accorded the plaintiff's choice of forum." *Id.* Second, the court must "consider[] whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute." *Id.* And finally, a court must "balance[] the private and public interests implicated in the choice of forum." *Id.*

As stated above, the interests do not favor Mr. Parlato's litigation of this claim in Connecticut. All factors weigh in favor of the conclusion that the Court's should dismiss this case.

Mr. Parlato is not a media giant. He is a small media outlet. The burden on Mr. Parlato by requiring him to defend the suit in Connecticut is substantial.

The forum state has no interest in seeing the system manipulated by an attorney for personal gain to curtail the rights of the free press and circumvent the letter and spirit of the Connecticut Statutes.

Requiring the Plaintiff, an attorney, to prosecute this case in another forum where jurisdiction properly lies would neither be inconvenient nor unduly burdensome for him.

Moreover, the judicial system's interest would be vindicated by disallowing jurisdiction in this forum, as no other defendants in this case will be defending against the plaintiffs' claims in Connecticut. Duplicative litigation in another forum would be a waste of judicial resources, and that concern is not present here.

The Court should find that asserting jurisdiction over Mr. Parlato does not comport with due process and is contrary to notions of fair play and substantial justice.

Accordingly, the Court should dismiss this case.

**AS A LAST RESORT, THE COURT SHOULD TRANSFER THIS CASE TO FLORIDA BECAUSE IT IS UNDULY BURDENSOME FOR MR. PARLATO TO DEFEND IN CONNECTICUT**

The district court of a district that filed a case laying venue in the wrong division or district shall dismiss, or if it is in the interest of justice, transfer such case to any district or division *in which it could have been brought*. 28 U.S.C. § 1406(a). Whether dismissal or transfer is appropriate lies within the district court's sound discretion. *See* Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993); Naartex Consulting Corp. v. Watt, 232 U.S. App. D.C. 293, 722 F.2d 779, 789 (D.C. Cir.

1983), *cert. denied*, 467 U.S. 1210, 81 L. Ed. 2d 355, 104 S. Ct. 2399 (1984); 15 Charles A. Wright et al., *Federal Practice and Procedure* § 3827, at 261-62 (2d ed. 1986).

If the Court does not see fit to dismiss this case against Mr. Parlato, the Court should transfer the case to the U.S. District Court for the Southern District of Florida, Key West Division, where the equities make it much less burdensome for him to defend.

Accordingly, as a last resort, this case should be transferred to the U.S. District Court for the Southern District of Florida, Key West Division.

**CONCLUSION**

The Plaintiff's complaint should be dismissed WITH PREJUDICE for the reasons stated above.

**WHEREFORE**, Defendant Frank Parlato, Jr., respectfully moves this Honorable Court for an Order:

a) Striking Counts 1 and 3 pursuant to Rule 12(f) of the Federal Rule of Civil Procedure (FRCP) as duplicative of Count 2; or

b) Striking Counts 1 and 3 pursuant to FRCP Rule 12(f) as improperly plead, unsuccessful in law and fact, and prejudicial; and

c) Dismissing this matter pursuant to FRCP Rule 12(b)(2); or in the alternative

d) Dismissing this matter pursuant to FRCP Rule 12(b)(4); or in the alternative

e) Dismissing this matter pursuant to FRCP Rule 12(b)(5); or in the alternative

f) Dismissing this matter pursuant to FRCP Rule 12(b)(6); or in the alternative

g) Dismissing this matter pursuant to the doctrine of *Forum Non-Conveniens* or in the alternative

h) Transferring this matter to the United States District Court for the Southern District of Florida, Key West Division, and

i) For such other and further relief as this Honorable Court shall deem just and equitable.

Dated: Big Pine Key, Florida
November 20, 2023

Respectfully submitted,

FRANK PARLATO, JR.
29009 Geranium Drive
Big Pine Key, Florida 33043
Tel: (305) 783-7083
Email: frankparlato@gmail.com

**ORAL ARGUMENT REQUESTED**