Christopher Ambrose<br>
381 Horsepond Rd.<br>
Madison CT 06443<br>
ca0515@aol.com<br>
203.505.1889

November 30, 2023

Hon. Michael P. Shea

Chief US District Judge for the District of Connecticut

450 Main Street - Annex 135

Hartford, Connecticut 06103

Re: Civil Case #: 3:22-cv-01648-MPS
*Ambrose v. Parlato*

Dear Chief Judge Shea:

I am the Plaintiff in the captioned case. Under FRCP 6(b)(1)(A), I respectfully request an extension of time of approximately 45 days, from December 12 to January 26, 2024, to submit an answer to the Defendant's Motion to Dismiss. I have attempted to obtain the Defendant's consent; I did not receive a response.

I require extra time for the following reasons:

The Defendant's Motion is double the length permitted by the federal rules and raises many issues that have little to do with the case but will require me, a *pro se* litigant, time to research and determine how to respond. To cite only two examples: 1) The Motion introduces alleged "evidence," including events that had not occurred and witnesses who were not part of the case

when I filed the Complaint. Do these require a response? 2) The Motion asserts that service was improper, but does the Defendant's filing the Motion to Dismiss waive this claim?

The primary reason I require an extension is the intense trauma my three minor children and I are suffering due to the months-long, relentless torment inflicted by the Defendant and his live-in girlfriend, Karen Riordan ("Riordan"), who is also my former wife and the children's mother.

A brief context is necessary to provide the Court with a better understanding of how the Defendant's malicious course of conduct directly impacts my ability to respond promptly.

In April 2020, the Court (Grossman, J.) awarded me sole legal and physical custody of my three children after investigations involving the Department of Children and Families ("DCF"), Yale New Haven Hospital, and the Madison Police Department determined Riordan repeatedly coached them to accuse me of sexual abuse, among other things. In September 2021, unbeknownst to me, Riordan moved to Florida to live with the Defendant, who was already under a 19-count federal indictment for fraud and money laundering. On October 3, 2021, the Defendant began publishing the viciously defamatory articles against me that destroyed my reputation, caused me emotional and financial harm, and are the basis for the Complaint.

When the Defendant was facing sentencing in early 2023, Riordan secretly returned from Florida to Connecticut, renting a house 10 minutes from where the children and I live. After choosing not to see the children for three years, she unlawfully took them beginning in April 2023, and immediately had them make false sexual abuse allegations against me. The children had not

made any allegations in the three years I had custody. DCF and the police again determined the allegations were baseless, but Riordan refused to return the children. Because the police consider custody matters "civil," they would not get involved. I had to rely on the Family Court to enforce the custody orders, which took considerable time and resources.

On August 8, after a two-day hearing, the Connecticut Superior Court (O'Neill, J.) found that the children were under Riordan's "coercive control," a form of psychological abuse considered to be domestic violence (*See*, Conn. Gen. Stat. §§ 46b-1, 46b-15). The Court issued Protective Orders on behalf of the children against Riordan, ordering her not to have any contact with them. (CT Docket No: FBT-FA23-5052399-S; FBT-FA23-5052300-S; and FBT-FA23-5052301-S).

Riordan did not appear in court that day; instead, she disappeared as did the children. Police later found the children at the home of Riordan's estranged father in Rhode Island, where she had sent them to keep them from me. (Riordan didn't answer phone calls and was not located). Unfortunately, RI police, like their Connecticut counterparts, regard custody as civil and would not assist beyond ensuring the children's welfare.

For the next three months, each time I located the children and went through the court process to have them returned, the Defendant and/or parties she controls or pays moved them to a new secret location. Over three months, the children were sent from CT to RI and then to two locations in NY.

On September 15, the Court (O'Neill, J.) found Riordan in contempt of the restraining orders because she had been in covert contact with the children. I requested the Court not incarcerate Riordan, but Supplemental Orders were issued directing her, *inter alia*, not to use third parties - such as her boyfriend, the Defendant - to communicate with the children or otherwise interfere with my custody.

However, before and after the Supplemental Orders, the Defendant constantly communicated with the children, writing dozens of articles that included his conversations with them in real-time. In his published pieces, he stated the children should not return to me, their father, because I was dangerous. He repeatedly stated that they should be with their mother, his lover, though she had been adjudicated to be psychologically abusive to them. [1] In short, the Defendant directly interfered with my custody and did so very publicly. He also violated their privacy by posting his discussions with- and photos and audio of- the children. He subjected them to intense public scrutiny, including by their peers, who bullied them. The Defendant's exploitation of the children was a craven bid to gain clicks for his website.

The children's months-long odyssey of being covertly moved from one of Riordan's associates to the next came to an end only weeks ago, on October 23, when the Rockland County (NY) Family Court issued a *habeas writ* directing the sheriff to remove the children from Riordan's cousin's home, where they had been sent for nearly a month, during which they were in almost daily contact with the Defendant, who published numerous articles about them.

---

[1] In addition to the Superior Court's determination of coercive control, DCF substantiated a separate case of psychological abuse against Riordan on behalf of the children.

When the deputies arrived at the cousin's house, the Defendant was on the phone with the children and had them take photos of the police and me outside. He published the images in lengthy articles containing their quotes, and the police, my attorneys, DCF, the judge, and I were all maligned. In short, the Defendant made a horrible situation much worse, inflicting extreme emotional distress on the children and me, which will require considerable time to heal.

The Defendant has defamed me in 200+ articles, over 50 since August 1, 2023, virtually all of which falsely accuse me of heinous crimes, including sexually abusing my children and threatening to rape my daughter. The Defendant has repeatedly identified the children - with their photos - as victims of sexual abuse in his online articles. *The legitimate press affords adult victims of sexual assault more privacy than the Defendant has given three innocent minors.* The Defendant has also relentlessly identified me as a sexual predator, despite child protective services in CT and NY exonerating me of all such allegations and courts in two states determining me to be a safe parent worthy of sole legal and physical custody. The Defendant's actions are directly responsible for the trauma my children and I have endured and are attempting to process.

As the Defendant acknowledges in his Motion, he publicized his salacious articles and exploited the children further by sharing his false accusations across other platforms, including Robbie Harvey's TikTok site, which has over 3 million followers. What the Defendant's Motion pointedly fails to state is that *Harvey removed all videos about and references to the children and me because he realized the Defendant's allegations were false after he saw the evidence I provided. That is the same evidence I shared with the Defendant over a year ago.*

The emotional fall-out from the Defendant's and Riordan's cruel and egregious misconduct has been significant. Since the children got home at the end of October, I have done little but try to manage it. I have spent an enormous amount of time and energy arranging and attending therapy sessions with each child. I have had to work with the schools and engage tutors for the three kids to re-acclimate and "catch them up" after missing the first two months of class. At the direction of the children's therapists, I spend considerable time with them in structured activities to repair the damage the Defendant's and Riordan's conduct and published lies have done to my paternal relationship.

I must also deal with the continuing legal consequences of Riordan's contempt of the custody and restraining orders, which were enabled and assisted by the Defendant. Holding Riordan accountable in court is critical because it is the only way to protect the children and me going forward. A hearing is scheduled tentatively for two days, but given the scope of wrongdoing and the number of potential witnesses, including police, DCF, etc., it will likely take longer. Since April, I have spent six figures on attorney fees in two states to get the children back. I now represent myself in all the ongoing legal matters, which takes significant time and energy.

Moreover, on information and belief, I just learned that Riordan is again in active contempt of the restraining orders, requiring me to file an emergency motion for relief, which under CGS § 46B-15(j) must be heard within five days.

The Defendant's repeated misconduct toward my children and me has also forced me to spend a great deal of time with law enforcement. I have had to gather numerous documents and have conversations with the Monroe County (FL) Sheriff and the Florida State's Attorney regarding potential criminal charges. I have also been in frequent contact with the US Probation Office for South Florida concerning the Defendant's relentless harassment of my family even as he is under home confinement.

In addition, my mom is in hospice and deserves time and attention, and I am the sole financial support for my three children and must work.

Finally, correcting some of the Defendant's material misrepresentations made about me in the Motion is essential so that the Court has an accurate picture.

The Defendant claims that I am a seasoned attorney. I graduated from law school over 30 years ago and briefly practiced corporate law - never litigation. I then shifted careers, so I allowed my law license to lapse - it was not "suspended," as the Defendant states, insinuating some misconduct.

The Defendant claims he is *pro se*, but he works with two attorneys, Richard Luthmann and Joe O'Hara,; each had years of litigation experience before they were disbarred and incarcerated. Luthmann was jailed in federal prison for extortion and fraud, and, in a separate episode, O'Hara was imprisoned for conspiracy to commit fraud. He was also involved with the "Nxivm" sex cult, where the Defendant was the publicist to the leader, who is serving 120 years for sex

trafficking. The Defendant employs both of these disgraced attorneys on his website, and on information and belief, they provide legal services, including writing the Motion.

My life is overwhelming at the moment, wholly consumed with managing the emotional needs of my children and the seeking justice after the trauma and damage Riordan and the Defendant caused us over the last six months. I am grateful for the opportunity to hold the Defendant accountable for the pain and utter ruin his defamation/invasion of privacy he has caused my family and me. Still, I need time to do so correctly. On the contrary, the Defendant is in home confinement under supervision by US Probation after taking a plea on his 19-count indictment for fraud, money laundering, and tax evasion. He has nothing but time on his hands.

For these reasons, I respectfully request an extension until January 26, 2024 to submit my response to his Motion.

Respectfully submitted,

Christopher Ambrose

cc: Frank Parlato, Jr.
29009 Geranium Dr.
Big Pine Key, FL 33043